**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| ANGEL JOEL GUSMAN NEGRON, ALMA SUE CROFT, TIFFANY ROSE FARRAND, COURTNEY SUSANNE BROWN, VIKESHA ANDREALL EXFORD, CHERYL RENEE HAYES, LINDA SUE DUNN, CHRISTINA MARIE MCCLELLAN, LEAH SHATE WILLIS, JILL RADLEY, MATTIE RETHA BOYDEN, DONALD WAYNE PITCHERS JUNIOR, GEORGE GOUNARIS, and MICHAEL DARRYL CUNNINGHAM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ASCENSION HEALTH, ASCENSION HEALTH ALLIANCE, ASCENSION HEALTH – IS INC. D/B/A ASCENSION TECHNOLOGIES,<br><br>Defendants. | Case No. 4:24-cv-00669-JAR<br><br>Jury Demand |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 1

ARGUMENT .......... 3

I. Plaintiffs Have Article III Standing to Bring Their Claims .......... 3

A. Plaintiffs' allegations of actual identity theft and financial fraud satisfy Article III. .......... 4

B. Plaintiffs' imminent risk of harm, standing alone, constitutes an Article III injury-in-fact. .......... 7

C. All Plaintiffs have standing due to the diminished value of their Private Information and loss of privacy. .......... 10

D. Plaintiffs did not receive the benefit of their bargain. .......... 12

E. Plaintiffs plead the requisite injury and causation related to the receipt of healthcare. .......... 13

II. Choice of Law .......... 14

III. Ascension's Arguments Attacking Plaintiffs' Negligence Claims Are Meritless. .......... 15

A. The Economic Loss Doctrine does not apply. .......... 15

IV. Plaintiffs' Negligence *Per Se* Claims Can be Based on the Federal Torts Claims (FTC) Act and HIPAA. .......... 16

V. Plaintiffs Plausibly Allege Each Element of Their Contract-Based Claims. .......... 17

A. Breach of Express Contract (Count III) .......... 17

B. Breach of Implied Contract (Count IV) .......... 20

VI. Unjust Enrichment .......... 22

VII. Invasion of Privacy .......... 23

A. Plaintiffs have stated a claim for Intrusion Upon Seclusion .......... 23

B. Plaintiffs have stated a claim for Public Disclosure of Private Facts .......... 24

VIII. Statutory Claims .......... 26

A. Plaintiffs have alleged actionable omissions and misrepresentations .......... 26

B. Plaintiffs have alleged that the violations of consumer protection statutes substantially occurred in those states .......... 29

C. Plaintiffs' OCPA claim is not preempted .......... 30

D. Plaintiffs state claims under the MMPA .......... 30

E. Plaintiffs' ADTPA class claim is proper .......... 32

F. Plaintiffs' claims for lack of timely notice under the Illinois, Wisconsin, and Michigan statutes are proper .......... 32

G. Plaintiffs have plausibly alleged a breach of confidentiality based on the Wis. Stat. § 146.81 *et seq.* ........ 34

IX. Plaintiffs Have Properly Named Ascension Health Alliance and Ascension Technologies ........ 35

## TABLE OF AUTHORITIES

*Abels v. Farmers Commodities Corp.*,
259 F.3d 910 (8th Cir. 2001) ........................................ 26

*Amburgy v. Express Scripts, Inc.*,
671 F. Supp. 2d 1046 (E.D. Mo. 2009)........................................ 29

*Animal Legal Def. Fund v. Vaught*,
8 F.4th 714 (8th Cir. 2021) ........................................ 3

*Ashanti v. City of Golden*,
666 F.3d 1148 (8th Cir. 2012) ........................................ 10

*Astra USA, Inc. v. Santa Clara County*,
563 U.S. 110 (2011)........................................ 16

*Baldwin v. Nat'l W. Life Ins. Co.*,
2021 WL 4206736 (W.D. Mo. Sept. 15, 2021) ........................................ passim

*Belville v. Ford Motor Co.*,
60 F. Supp. 3d 690 (S.D. W.Va. 2014)........................................ 27

*BJC Health System v. Columbia Cas. Co.*,
478 F.3d 908 (8th Cir. 2007) ........................................ 27

*Bohnak v. Marsh & McLennan Cos.*,
79 F.4th 276 (2d Cir. 2023) ........................................ 8, 11

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F.Supp.3d 1359 (S.D. Fla. 2017) ........................................ 15, 16

*Burns v. Toyota Motor Sales, U.S.A., Inc.*,
2015 WL 11117157 (W.D. Ark. April 23, 2015) ........................................ 27

*Carlsen v. GameStop, Inc.*,
833 F.3d 903 (8th Cir. 2016) ........................................ 12

*Carr v. Okla. Student Loan Auth.*,
699 F. Supp. 3d 1241 (W.D. Okla. 2023)........................................ 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)........................................ 8

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) ........................................ 8

*Conway v. CitiMortgage, Inc.*,
438 S.W.3d 410 (Mo. 2014) ........................................ 31

*Crumb v. Orthopedic Surgery Med. Grp. Crumb v. Orthopedic Surgery Med. Grp.*,
2010 WL 11509292 (C.D. Cal. Aug. 18, 2010) .......... 14

*Delmar Fin. Co. v. Ocwen Loan Servicing, L.L.C.*,
2019 WL 2075893 (E.D. Mo. May 10, 2019) .......... 26

*Dittmer Properties, L.P. v. F.D.I.C.*,
708 F.3d 1011 (8th Cir. 2013) .......... 18

*Duqum v. Scottrade, Inc.*,
2016 WL 3683001 (E.D. Mo. July 12, 2016) .......... 9

*Dusterhoft v. OneTouchPoint Corp.*,
2024 WL 4263762 (E.D. Wis. Sept. 23, 2024) .......... 35

*Dyer v. Nw. Airlines Corps.*,
334 F. Supp. 2d 1196 (D.N.D. 2004) .......... 19

*Finesse Express, LLC v. Total Quality Logistics, LLC*,
2021 WL 1192521 (S.D. Ohio Mar. 30, 2021) .......... 14

*First Choice Fed. Credit Union v. Wendy's Co.*,
2017 WL 9487086 (W.D. Pa. Feb. 13, 2017) .......... 16

*Flores v. Aon Corp.*,
242 N.E.3d 340 (Ill. App. Ct. 2023) .......... 24

*Fox v. Iowa Health Sys.*,
399 F. Supp. 3d 780 (W.D. Wis. 2019) .......... 34

*Franco v. Bunyard*,
547 S.W.2d 91 (Ark. 1977) .......... 17

*FTC v. Wyndham Worldwide Corp.*,
10 F. Supp. 3d 602 (D.N.J. 2014) .......... 27

*Garrett v. Cassity*,
2010 WL 2540748 (E.D. Mo. June 17, 2010) .......... 35

*Gibson v. Warrior Met Coal Inc.*,
2024 WL 4399433 (N.D. Ala. Oct. 3, 2024) .......... 11

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) .......... 16

*Hale v. Emerson Elec. Co*,
942 F.3d 401 (8th Cir. 2019) .......... 30, 31

*Hall v. Centerspace, LP*,
2023 WL 3435100 (D. Minn. May 12, 2023) .......... 19, 21

*Hargis v. JLB Corp.*,
357 S.W.3d 574 (Mo. 2011) .......... 22

*Hekel v. Hunter Warfield, Inc.*
118 F.4th 938 (8th Cir. 2024) .......... 10

*Hill v. MCI WorldCom Commc'ns, Inc.*,
141 F. Supp. 2d 1205 (S.D. Iowa 2001) .......... 26

*Hiscox Ins. Co. Inc. v. Warden Grier, LLP*,
474 F. Supp. 3d 1004 (W.D. Mo. 2020) .......... 21

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) .......... 5

*In re Am. Med. Collection Ag., Inc. Customer Data Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021) .......... 32

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) .......... 11, 13

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) .......... 18, 33

*In re Cap. One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) .......... 16

*In re Equifax Inc., Customer Data Sec. Breach Litig.*,
362 F. Supp.3d 1295 (N.D. Ga. 2019) .......... 33

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
2024 WL 4547212 (S.D. Fla. Sept. 18, 2024) .......... 32

*In re GE/CBPS Data Breach Litig.*,
2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) .......... 12

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .......... 23

*In re Illuminate Educ. Data Sec. Incident Litig.*,
2023 WL 3158954 (C.D. Cal. Apr. 19, 2023) .......... 6

*In re Marriott International, Inc., Customer Data Security Breach Litigation*,
440 F. Supp. 3d 447 (D. Md. 2020) .......... 5, 10, 13, 14

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) .............................................................. 10, 19, 29

*In re Moveit Customer Data Sec. Breach Litig.*,
2024 WL 5092276 (D. Mass. Dec. 12, 2024) ................................................................ 7

*In re Pawn Am. Consumer Data Breach Litig.*,
2022 WL 3159874 (D. Minn. Aug. 8, 2022) ................................................................ 11

*In re Practicefirst Data Breach Litigation*,
2022 WL 354544 (W.D.N.Y. Feb. 2, 2022) ................................................................. 9

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) ............................................................... 32, 33

*In re SuperValu, Inc.*,
870 F.3d 763 (8th Cir. 2017) ..................................................................................... 8, 9

*In re Target Corp. Data Sec. Breach Litig.*,
66 F. Supp.3d 1154 (D. Minn. 2014) ......................................................................... 33

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
534 F. Supp. 3d 1067 (N.D. Cal. 2021) ..................................................................... 32

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
684 F. Supp. 2d 942 (N.D. Ohio 2009) ...................................................................... 27

*In re Zappos.com, Inc.*,
2013 WL 4830497 (D. Nev. Sept. 9, 2013) ................................................................ 19

*J.J. ex rel. C.W. v. Poplar Bluff Reg'l Med. Ctr., LLC*,
675 S.W.3d 259 (Mo. App. 2023) ............................................................................. 16

*J.J.'s Bar & Grill, Inc. v. Time Warner Cable Midwest, LLC*,
539 S.W.3d 849 (Mo. App. 2017) ............................................................................. 16

*Jackson v. Barton*,
548 S.W.3d 263 (Mo. 2018) ...................................................................................... 31

*Jackson v. Cadillac Cowboy, Inc.*,
986 S.W.2d 410 (Ark. 1999) ...................................................................................... 17

*Johnson v. Yuma Reg'l Med. Ctr.*,
2024 WL 4803881 (D. Ariz. Nov. 15, 2024) .............................................................. 19

*K.A. ex rel. B.W. v. Children's Mercy Hosp.*,
2019 WL 2144815 (W.D. Mo. May 16, 2019) ............................................................ 12

*Kuhns v. Scottrade, Inc.*,
868 F.3d 711 (8th Cir. 2017) .......................................................... 18, 29

*Leonard v. McMenamins, Inc.*,
2022 WL 4017674 (W.D. Wash. Sept. 2, 2022)........................................ 11

*Lozier v. Quincy Univ. Corp.*,
2019 WL 409368 (C.D. Ill. Jan. 31, 2019) ............................................ 25

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................ 3, 4

*Lurry v. PharMerica Corp.*,
2024 WL 2965642 (W.D. Ky. June 12, 2024)......................................... 24

*Mackey v. Belden, Inc.*,
2021 WL 3363174 (E.D. Mo. Aug. 3, 2021)...................................... passim

*Mathioudakis v. Conversational Computing Corp.*,
2012 WL 4052316 (S.D. Ind. Sept. 13, 2012) ......................................... 28

*McKenzie v. Allconnect, Inc.*,
369 F. Supp. 3d 810 (E.D. Ky. 2019) ............................................ 23, 24, 25

*McNealy v. City of St. Louis, Missouri*,
2024 WL 4817299 (E.D. Mo. Nov. 18, 2024).......................................... 20

*Mead v. Moloney Sec. Co.*,
274 S.W.3d 537 (Mo. Ct. App. 2008)...................................................... 20

*Medoff v. Minka Lighting, LLC*,
2023 WL 4291973 (C.D. Cal. May 8, 2023) ............................................ 11

*Millennium Communications & Fulfillment, Inc. v. Office of the Attorney General, Dep't of Legal Affairs*,
761 So. 2d 1256 (Fla. 3rd DCA 2000)...................................................... 30

*Miller v. Motorola, Inc.*,
560 N.E.2d 900 (Ill. Ct. App. 1990) ........................................................ 25

*State ex rel. Nixon v. Estes*,
108 S.W.3d 795 (Mo. App. 2003) ...................................................... 30, 31

*Missouri v. Biden*,
2024 WL 3104514 (E.D. Mo. June 24, 2024) .............................................. 3

*Mitchell v. Blue Cross Blue Shield of N.D.*,
953 F.3d 529 (8th Cir. 2020) .................................................................. 12

*Mohsen v. Veridian Credit Union*,
2024 WL 2080177 (N.D. Iowa, May 9, 2024) .......... 21, 23

*Mounce v. CHSPSC, LLC*,
2017 WL 4392048 (W.D. Ark. Sept. 29, 2017) .......... 32

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp.3d 749 (C.D. Ill. 2020) .......... 26

*Perry v. Bay & Bay Transp. Servs., Inc.*,
650 F. Supp. 3d 743 (D. Minn. 2023) .......... 8, 12

*Plubell v. Merck & Co., Inc.*,
289 S.W.3d 707 (Mo. Ct. App. 2009) .......... 31

*Pollack v. Cruz*,
296 So.3d 453 (Fla. 4th Dist. Ct. App. 2020) .......... 15

*Pulliam v. West Technology Group, LLC*,
2024 WL 356777 (D. Neb. Jan. 19, 2024) .......... 9

*Rand v. Eyemart Express, LLC*,
2024 WL 4376162 (N.D. Tex. Oct. 1, 2024) .......... 3

*Randall v. Mich. High Sch. Athletic Ass'n*,
965 N.W.2d 690 (Mich. Ct. App. 2020) .......... 17

*Renaissance Cruises, Inc. v. Glassman*,
738 So. 2d 436 (Fla. 4th DCA 2005) .......... 30

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) .......... 13

*Richardson v. Rohrbaugh*,
857 S.W.2d 415 (Mo. App. 1993) .......... 15

*Robinson v. Sunshine Homes, Inc.*,
2012 OK CIV APP 87 (2010) .......... 30

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) .......... 32

*Smallman v. MGM Resorts Int'l*,
638 F. Supp. 3d 1175 (D. Nev. 2022) .......... 11, 13

*Specht v. Google, Inc.*,
660 F. Supp. 2d 858 (N.D. Ill. 2009) .......... 30

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2007) ........................................ 3

*Spy Optic, Inc. v. Alibaba.com, Inc.*,
163 F. Supp. 3d 755 (C.D. Cal. 2015) ........................................ 2

*State ex rel. Missouri Highway & Transp. Comm'n v. Maryville Land P'ship*,
62 S.W.3d 485 (Mo. Ct. App. 2001) ........................................ 18

*Sweet v. BJC Health Sys.*,
2021 WL 2661569 (S.D. Ill. June 29, 2021) ........................................ 26

*T&M Jewelry, Inc. v. Hicks*,
189 S.W.3d 526 (Ky. 2006) ........................................ 17

*Thomas v. Baker*,
2020 WL 6870994 (D. Mass. Nov. 23, 2020) ........................................ 14

*Toben v. Bridgestone Retail Ops., LLC*,
2013 WL 5406463 ........................................ 32

*Tractor Hydr. Fluid. Mkt., Sales Pracs. and Prod. Liab. Lit.*,
2023 WL 9064606 (W.D. Mo. Dec. 13, 2023) ........................................ 31

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................ 8, 9, 10

*Walgreen Co. v. Hinchy*,
21 N.E.3d 99 (Ind. Ct. App. 2014) ........................................ 26

*Webb v. Injured Workers Pharmacy, LLC*,
72 F.4th 365 (1st Cir. 2023) ........................................ 8

*Weisenberger v. Ameritas Mut. Holding Co.*,
597 F. Supp. 3d 1351 (D. Neb. 2022) ........................................ 8, 19

*Wood v. City of Detroit*,
917 N.W.2d 709 (Mich. Ct. App. 2018) ........................................ 17

Statutes

15 Okla. St. § 753 .... 27

15 U.S.C. § 45(a) .... 27

815 Ill. Comp. Stat. 505/2 .... 27

Ark. Code § 4-88-113 .... 32

Fla. Stat. § 501.204(1) .... 27

Ky. Rev. Stat. § 446.070 .... 17

Mich. Comp. Laws Ann. § 455.72(1) .... 34

Mich. Comp. Laws § 445.903 .... 27

Mo. Rev. Stat. § 407.010(4) .... 31

Mo. Stat. § 407.020 .... 27

Wis. Stat. Ann. § 134.98(2)(cm)(1) .... 34

Wis. Stat. § 100.18 .... 27

Wis. Stat. § 146.81 .... i, 34

Rules

Federal Rule of Civil Procedure 23 .... 32

Other Authorities

76 Fed. Reg. 7213 (Feb. 9, 2011) .... 27

Restatement (Second) of Torts § 8A .... 23, 25

Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 14 .... 16

## INTRODUCTION

Ascension, as one of the largest healthcare systems in the country, knew it was a target for hackers seeking to steal its patients' private medical information. But it failed to implement and maintain reasonable measures to protect its patients' information. On May 8, 2024, Ascension experienced a massive ransomware attack (the "Data Breach"). As a result of the Data Breach, cybercriminals targeted and stole the personal identifying information ("PII") and protected health information ("PHI") (collectively, "Private Information") of millions of patients—including Plaintiffs and members of the Class. Because Plaintiffs' claims and factual allegations are well pleaded, Ascension's motion should be denied.

## BACKGROUND

Ascension provides a wide variety of medical services through its 140 hospitals in 19 states and the District of Columbia. Consolidated Class Action Complaint's ("CAC") ¶ 1. Plaintiffs are former and current patients of Ascension. As a condition of receiving healthcare services, Plaintiffs were required to provide Ascension with their Private Information and, in return, reasonably expected that Ascension would safeguard that information. Based on Ascension's recent public filings, the Data Breach affected at least 5,599,699 individuals, and affected a staggering amount of information including names, medical information (such as medical record number, date of service, types of lab tests, or procedure codes), payment information (such as credit card information or bank account number), insurance information (such as Medicaid/Medicare ID, policy number, or insurance claim), government identification (such as Social Security number, tax identification number, driver's license number, or passport number), and other personal

information (such as date of birth or address).[1] Ascension also disclosed that the Data Breach had originally started on February 29, 2024, but that Ascension inexplicably did not detect it until May 8, 2024—and then waited over 7 months to provide notice to the Class. This complete failure to detect the ongoing Data Breach reinforces Plaintiffs' contentions that Ascension's data security was woefully inadequate. CAC ¶ 2.

In both the initial and recent notice of the Data Breach, Ascension obfuscated the nature of the Data Breach and the threat it poses, refusing to tell its patients the identity of the cybercriminals responsible, the vulnerabilities exploited, the remedial measures undertaken (if any) by Ascension to ensure such a breach does not happen again, or explanation for why detection and notice were delayed so long. *Id.*; *see also supra* n.1. But despite its attempt to downplay the Data Breach, Ascension knew it was a target of cybercriminals seeking the highly sensitive Private Information they store on their network, then failed to prevent, detect, or mitigate the Data Breach leading to the exfiltration of the Class's Private Information. CAC ¶ 7.

Following the Data Breach, Plaintiffs suffered a variety of fraud and identity theft and remain at present and imminent risk of continued harm. Nevertheless, Ascension asserts that Plaintiffs fail not only to sufficiently plead their several claims for relief but also fail to make the threshold jurisdictional showing that they have been injured by the Data Breach. The Court should reject both theories and deny Ascension's motion.

---

[1] Ascension began providing consumer notification on December 19, 2024. *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/e55264f2-ff87-4b28-874d-653cfb735fe6.html. Plaintiffs cite to this updated notice and are providing it to the Court as a matter of public record. *See Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 761–62 (C.D. Cal. 2015); Fed. R. Evid. §§ 201(b), (c)(2). Plaintiffs are willing to amend the complaint as needed to account for the recent notice.

# ARGUMENT

## I. PLAINTIFFS HAVE ARTICLE III STANDING TO BRING THEIR CLAIMS

Ascension first launches a facial attack on Plaintiffs' standing, "meaning the Court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Mackey v. Belden, Inc.*, 2021 WL 3363174, at *4 (E.D. Mo. Aug. 3, 2021) (cleaned up). To survive a facial attack challenging Article III standing "[P]laintiffs must allege sufficient facts to support a reasonable inference that they can satisfy the elements of standing." *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021). This requires alleging: (1) "[Plaintiffs] have suffered an 'injury-in-fact' that is concrete, particularized, and actual or imminent, (2) that there is a causal connection between the alleged injury and the defendant's conduct, and (3) that judicial relief will likely redress the injury." *Missouri v. Biden*, ---F. Supp. 3d---, 2024 WL 3104514, at *17 (E.D. Mo. June 24, 2024) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way," and is concrete when it is "real," not "abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2007) (citations omitted).

Both tangible and intangible injuries may be sufficiently concrete to satisfy the "injury-in-fact" element of Article III, including injuries based on the risk of future harm. *Id.* at 341. "In determining whether an intangible harm constitutes an injury in fact, both history and the judgment of Congress play important roles." *Id.* at 340. "Under the Health Insurance Portability and Accountability Act ('HIPAA'), it is clear that disclosure of individually identifiable health information ('IIHI') without permission is a cognizable harm," and "a disclosure of IIHI is sufficient to establish a concrete harm." *Rand v. Eyemart Express, LLC*, 2024 WL 4376162, at *3 (N.D. Tex. Oct. 1, 2024).

To satisfy the second element of Article III, Plaintiffs' alleged injuries must be "fairly

traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (cleaned up). And finally, for the third element, it must be likely that the injury will be redressed by a favorable judicial decision. *Id.* at 561. Here, Ascension seeks to duck responsibility for harming Plaintiffs by claiming that Plaintiffs' injuries either do not qualify as injuries-in-fact or are not fairly traceable to the Data Breach. Ascension is wrong.

### A. PLAINTIFFS' ALLEGATIONS OF ACTUAL IDENTITY THEFT AND FINANCIAL FRAUD SATISFY ARTICLE III.

Plaintiffs allege several legally cognizable injuries as a result of Ascension's shoddy data security, including: (1) actual identity theft and financial fraud; (2) the imminent risk of future identify theft and fraud; (3) time lost and money spent on mitigation; (4) diminution in the value of Plaintiffs' Private Information; (5) the invasion of Plaintiffs' privacy interests; (6) the failure to receive the benefits of their bargain with Ascension; (7) emotional distress; and (8) the inability to obtain needed medical care. Courts regularly conclude that these allegations are sufficient to establish Article III standing.

Ascension does not dispute that allegations of actual identity theft and fraud from the Data Breach would demonstrate Article III standing. Instead, it argues that the injuries Plaintiffs allege are not "fairly traceable" to Ascension's conduct.[2] But Plaintiffs Brown, Cunningham, Exford, and Radley each have alleged instances of identity theft or financial fraud that are easily traceable to the Data Breach, particularly at the pleading stage.

---

[2] This argument is especially weak because Ascension's recent regulatory filings disclosed more information about the Breach. The breach affected 5,599,699 people, including almost all private information about them imaginable—names, medical information (such as medical record number, date of service, types of lab tests, or procedure codes), payment information (such as **credit card information** or **bank account number**), insurance information (such as Medicaid/Medicare ID, policy number, or insurance claim), government identification (such as **Social Security number**, tax identification number, **driver's license number**, or passport number), and other personal information (such as date of birth or address). *See supra* n.1.

To establish that their injuries are "fairly traceable" to the Data Breach, Plaintiffs must allege that Ascension "was a plausible source of [their] personal information." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018). For example, in *In re Marriott International, Inc., Customer Data Security Breach Litigation*, the plaintiffs alleged they stayed at a Marriott property, provided Marriott with their PII, Marriott suffered a data breach, and plaintiffs were harmed. 440 F. Supp. 3d 447, 467 (D. Md. 2020). The court found these allegations satisfied traceability. *Id.* Here, Plaintiffs similarly allege that: (1) they provided Private Information to Ascension; (2) Ascension suffered a Data Breach in which Plaintiffs' Private Information was accessed by hackers; and (3) Plaintiffs thereafter experienced harms long recognized at common law (like invasion of privacy, in addition to actual instances of financial fraud or identity theft, as well as the substantial risk of future harm).

Ascension ignores the CAC's clear allegations of identity theft and financial fraud tied to the Data Breach. Ascension argues that Plaintiffs Brown and Cunningham's fraud allegations lack a nexus to the Data Breach. Mot. at 20 (quoting CAC ¶¶ 156, 185).[3] But both Brown and Cunningham allege that they provided Ascension with their Social Security numbers and other financial information, CAC ¶¶ 42, 153, 181, that it was exfiltrated in the breach, *id.* ¶¶ 4, 7, 46, 47, and they thereafter discovered suspicious and fraudulent activity, *id.* ¶¶ 156, 185, which suggests misuse of their Private Information. Ascension now admits that this Private Information was stolen during the Data Breach. These factual allegations are more than sufficient to satisfy the traceability requirement.

Indeed, Plaintiffs' allegations closely track those in the *Mackey* case Ascension cites, where the plaintiff satisfied Article III by alleging a Social Security number was stolen in a breach

[3] Citations are to the ECF page numbers.

and subsequently used for fraud. *See* 2021 WL 3363174, at *5. The *Illuminate* case Ascension relies upon is distinguishable because there, the data breach only involved "students' academic, behavior, and demographic information," which lacked a nexus to the financial fraud plaintiffs' claimed. *In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 3158954, at *2 (C.D. Cal. Apr. 19, 2023). Here, like in *Mackey*, there is a clear nexus between the theft of Plaintiffs' information, which is commonly used to conduct fraud these Plaintiffs suffered.

Ascension also ignores key allegations by Plaintiffs Exford and Radley. Ascension claims their injuries are not fairly traceable because these Plaintiffs do not allege they gave Ascension bank account or financial account information that could lead to the account fraud they suffered. Mot. at 20. To the contrary, the CAC clearly alleges "the Private Information entrusted to Ascension by Plaintiffs . . . included: . . . financial information." CAC ¶ 42. Further, Exford and Radley both allege they gave their Social Security numbers and other information to Ascension. *Id.* ¶¶ 126, 267. As a result of the Data Breach, both Exford and Radley had suspicious or fraudulent activity on their bank accounts. *Id.* ¶¶ 130, 271. Accordingly, Plaintiffs Exford and Radley also satisfy Article III. Moreover, Ascension's arguments here are entirely refuted by Ascension's recent notice, where Ascension finally disclosed that hackers exfiltrated Plaintiffs' Private Information including payment information (such as credit card information or bank account number) and government identification (such as Social Security number, tax identification number, driver's license number, or passport number). *See supra* n.1.

Finally, Ascension elides key facts in claiming there is a lower risk of fraud from this Data Breach because the hackers deployed ransomware.[4] Here, Ascension admitted that hackers had

[4] Ascension also argues that Plaintiff Cunningham does not allege when the fraudulent activity occurred. However, it is clear from context that the fraudulent activity occurred after the breach.

access to its systems from February to May 2024 and that files containing Private Information were exfiltrated from its servers. *See supra* n.1. These admissions gut Ascension's misleading proclamations that ransomware is not directed at victims of a data breach.[5] *See In re Moveit Customer Data Sec. Breach Litig.*, 2024 WL 5092276, at *6 (D. Mass. Dec. 12, 2024) ("Defendants' arguments raise issues that may be relevant to a finder of fact. It cannot be said, however that, as a matter of law, someone whose data has been stolen by pirates has nothing to worry about based on the surmise that a demand for ransom obviates the risk of the data being used to harm."). Accordingly, Plaintiffs' Brown, Cunningham, Exford, and Radley have established they have Article III standing based on plausible allegations that they suffered actual fraud as a result of the Data Breach.

### B. PLAINTIFFS' IMMINENT RISK OF HARM, STANDING ALONE, CONSTITUTES AN ARTICLE III INJURY-IN-FACT.

All Plaintiffs successfully plead Article III standing based on the imminent threat of harm arising from the Data Breach. In data breach cases, courts routinely hold that Plaintiffs establish Article III standing based on a "substantial" or "certainly impending" risk of future harm. In determining whether a party has standing based on the risk of future harm, courts typically consider: (1) whether the thieves specifically targeted plaintiffs' data; (2) whether at least some of the data has been misused since the data breach; and (3) whether the type of data taken is sensitive,

---

*See* CAC ¶ 185 ("*Since the Data Breach* Plaintiff Cunningham has received notification that his PII or PHI is on the Dark Web. *Additionally*, Plaintiff Cunningham has had fraudulent activity on various accounts. Plaintiff Cunningham has also seen an increase in spam texts, emails, and phone calls since the breach.") (emphasis added).

[5] Ascension's argument betrays an out-of-date understanding of the cybersecurity landscape. Double-extortion events, wherein hackers steal data before deploying ransomware, are now commonplace. Ctr. for Internet Security, *Ransomware: The Data Exfiltration and Double Extortion Trends*, https://www.cisecurity.org/insights/blog/ransomware-the-data-exfiltration-and-double-extortion-trends (last visited Jan. 6, 2025). Regardless, Ascension is inappropriately asking the Court to find facts.

such that there is a risk of identity theft or fraud. *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 374–75 (1st Cir. 2023); *see also, e.g.*, *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 285 (2d Cir. 2023) (Article III satisfied where risk of future harm caused a separate concrete harm, such as lost time or expenses); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 156 (3d Cir. 2022) (same regarding emotional distress or spending money on mitigation measures).

Although the Eighth Circuit has not addressed this issue since *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), it appears likely to adopt a similar test. In *In re SuperValu, Inc.*, the court held that plaintiffs whose credit cards numbers were stolen failed to satisfy Article III based solely on the risk of future harm (though allegations of actual fraud still sufficed). 870 F.3d 763, 769 (8th Cir. 2017). The stolen information in *SuperValu* "d[id] not include any personally identifying information, such as social security numbers, birth dates, or driver's license numbers." *Id.* at 770. Since *SuperValu*, many district courts, including this Court, have found standing based on the risk of future harm where sensitive data was compromised. *See Mackey*, 2021 WL 3363174, at *5 ("The Supreme Court has clearly recognized that future injury can be sufficient to establish standing if such injury is 'clearly impending' or there is a 'substantial risk the harm will occur.' . . . The Court finds that injury is clearly imminent where PII including social security numbers has been stolen by hackers and unauthorized persons have already attempted to use such information to falsely file a tax return on a plaintiff's behalf.") (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).[6]

Here, Plaintiffs allege that Private Information on Ascension's computer networks was

---

[6] *See also Perry v. Bay & Bay Transp. Servs., Inc.*, 650 F. Supp. 3d 743, 751 (D. Minn. 2023) (distinguishing *SuperValu* and finding Article III satisfied based on compromised Social Security numbers); *Weisenberger v. Ameritas Mut. Holding Co.*, 597 F. Supp. 3d 1351, 1359 (D. Neb. 2022) (finding standing based on risk of future harm given "the sensitive nature of the PII compromised, and the allegations that [it] will be made available on the dark web").

specifically targeted. CAC ¶¶ 7, 46. And the data included sensitive information like Social Security numbers and PHI that was subsequently used to perpetrate actual fraud and identity theft following the data breach. *See supra* n.1. In addition, Plaintiffs Croft, Exford, Dunn, Boyden, Cunningham, Hayes, Pitchers, and Gounaris have each alleged that their Private Information has been found on the Dark Web after this Data Breach.[7] And all Plaintiffs suffered further concrete harms attempting to mitigate their risk of harm by researching the Data Breach, contacting credit agencies, and monitoring their credit statements, account statements, and medical records.[8] These allegations readily establish standing based on the risk of future harm.

None of the cases Ascension relies on alter this conclusion. In *Pulliam v. West Technology Group, LLC*, no plaintiffs alleged actual identity theft of fraud. 2024 WL 356777, at *2 (D. Neb. Jan. 19, 2024). In *Duqum v. Scottrade, Inc.*, hackers stole customer PII to build a database for marketing purposes, not identity theft. 2016 WL 3683001, at *1 (E.D. Mo. July 12, 2016). And in *In re Practicefirst Data Breach Litigation*, the court held that plaintiffs failed to show an imminent risk of future harm because there was no reported misuse of the data after the breach and on that basis concluded the data was not the target of the hackers. 2022 WL 354544 at *5–6 (W.D.N.Y. Feb. 2, 2022). Here, Plaintiffs allege at least some of the stolen data has been actually misused.

Ascension's remaining arguments offer no meaningful rebuttal. Ascension first relies on the Supreme Court's ruling in *TransUnion* for the proposition that "[i]n a suit for damages, the mere risk of future harm, *standing alone*, cannot qualify as a concrete harm." 594 U.S. at 436 (emphasis added). Plaintiffs' risk-of-future-harm allegations do not "stand alone," but are bolstered by the types of allegations that courts repeatedly find sufficient. Moreover, unlike the

[7] CAC ¶¶ 103, 130, 143, 171, 185, 214, 257.

[8] *See* CAC ¶¶ 103-04, 116-17, 129-30, 143-44, 156-57, 170, 172, 184, 186, 199, 201, 213, 215, 228, 230, 242, 245, 257-58, 270, 272.

portion of plaintiffs that could not establish standing in *TransUnion* because their false OFAC alerts were not shared with third parties, Plaintiffs' information was already obtained (and used) by criminals, making them more like the plaintiffs in *TransUnion* for whom the Supreme Court had "no trouble" finding standing because the OFAC reports were shared with third parties. *Id.* at 432. The ruling in *Hekel v. Hunter Warfield, Inc.* does not alter the analysis. 118 F.4th 938, 943 (8th Cir. 2024). In *Hekel*, the plaintiff provided just a "cryptic allegation" about a purported increased risk of harm stemming from her receiving a debt collection letter that violated state and federal statutes. *Id.* That is not the case here.

Ascension then attacks Plaintiffs' request for injunctive relief. Mot. at 22 (citing CAC ¶¶ 55, 316). Ascension claims that Plaintiffs lack standing to obtain prospective injunctive relief because Ascension claimed on its website that it would "rebuild and restore [its] systems securely." *Id.*[9] But Ascension cites no authority for the novel proposition that a party can sidestep litigation through self-serving statements posted on its own website. Whether Ascension has actually solved its security failings is a merits issue; it does not alter the standing analysis.

### C. ALL PLAINTIFFS HAVE STANDING DUE TO THE DIMINISHED VALUE OF THEIR PRIVATE INFORMATION AND LOSS OF PRIVACY.

Contrary to the cases Ascension cites, "the value of consumer [Private Information] is not derived solely (or even realistically) by its worth in some imagined market place where the consumer actually seeks to sell it to the highest bidder." *In re Marriott*, 440 F. Supp. 3d at 462; *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1204 (S.D. Fla. 2022) ("[P]laintiffs need not reduce their . . . PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder.")

[9] As discussed above, the Court may not consider Ascension's factual assertions on a motion to dismiss. *See Ashanti v. City of Golden*, 666 F.3d 1148, 1151 (8th Cir. 2012).

(collecting cases). Rather, "the Data Breach devalued Plaintiffs' PII by interfering with their fiscal autonomy." *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1191 (D. Nev. 2022). Courts have recognized that "loss of value of PII represents a cognizable form of economic injury." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 995 (N.D. Cal. 2016) (cleaned up).

With respect to loss of privacy, "courts across the country have held that the invasion of a plaintiff's privacy interest that occurred as a result of the theft of their PII is a concrete injury that establishes Article III standing." *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *3 (C.D. Cal. May 8, 2023) (cleaned up). "These courts reason that the invasion of privacy constitutes a concrete harm analogous to the common-law tort of public disclosure of private facts." *Id.* (citing *Leonard v. McMenamins, Inc.*, 2022 WL 4017674, at *5 (W.D. Wash. Sept. 2, 2022) (collecting cases)). As the Second Circuit recognized in *Bohnak*:

> [T]he core injury here—exposure of Bohnak's private PII to unauthorized third parties—bears some relationship to a well-established common-law analog: public disclosure of private facts. Bohnak's position is thus similar to that of the 1,853 class members who had standing in *TransUnion* based on the publication of misleading information to third parties without regard to whether the third parties used the information to cause additional harm.

79 F.4th at 285 (citation omitted); *see also In re Pawn Am. Consumer Data Breach Litig.*, 2022 WL 3159874, at *3 (D. Minn. Aug. 8, 2022) ("Plaintiffs have thoroughly described how their private information—much of whose value derives from the fact that it is private—has been published to a third party because of Pawn America's alleged negligence. That is sufficient to establish standing.").

And although Ascension argues the targeting of Plaintiffs with spam following the Data Breach is immaterial, courts recognize that the receipt of spam following a breach demonstrates that their PII is being misused. *See, e.g.*, *Gibson v. Warrior Met Coal Inc.*, 2024 WL 4399433, at *3 (N.D. Ala. Oct. 3, 2024) ("[Plaintiff] also alleges facts (the increase in spam calls beginning

after the data breach) from which it is reasonable to infer that actual misuse occurred."); *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *6 (S.D.N.Y. Aug. 4, 2021) (finding standing where plaintiff alleged he "received phishing and scam emails to his personal email address and phishing and scam phone calls to his personal phone number"). Plaintiff Ridley has alleged that she received spam specifically targeted at her and including personal information related to her health issues. CAC ¶ 271. Plaintiffs have also alleged that their Private Information has been published on the dark web and that criminals use "fullz" packages to compile dossiers used to further attempts at fraud and identity theft. *Id.* ¶¶ 49, 73, 130, 171, 185. Allegations that Private Information was published on the dark web following the Data Breach likewise support that Plaintiffs' data has been misused. *See Perry*, 650 F. Supp. 3d at 756; *Carr v. Okla. Student Loan Auth.*, 699 F. Supp. 3d 1241, 1253 (W.D. Okla. 2023).

### D. PLAINTIFFS DID NOT RECEIVE THE BENEFIT OF THEIR BARGAIN.

All Plaintiffs also satisfy Article III standing based on the loss of the benefits of their bargains with Ascension. Missouri district courts have found this damages theory to be viable in data breach context. *See K.A. ex rel. B.W. v. Children's Mercy Hosp.*, 2019 WL 2144815, at *5 (W.D. Mo. May 16, 2019) (finding ascertainable loss where plaintiff paid for medical record privacy protections she did not receive); *see also Baldwin v. Nat'l W. Life Ins. Co.*, 2021 WL 4206736, at *7 (W.D. Mo. Sept. 15, 2021) ("Plaintiffs sufficiently allege that NWL breached its obligations of an implied contract by failing to secure [Plaintiff's] and purported Class Members' PII."). Plaintiffs allege the same injury here.

The Eighth Circuit agrees: "Traditionally, a party to a breached contract has a judicially cognizable injury for standing purposes because the other party's breach devalues the services for which the plaintiff contracted and deprives them of the benefit of their bargain." *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020) (cleaned up); *see also, e.g., Carlsen*

*v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016) (devaluation of service "in an amount equal to the difference between the value of the [service] that [plaintiff] paid for and the value of the subscription that [plaintiff] received" was "an 'actual' injury" for purposes of standing); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (plaintiff had financial injury from paying higher premiums in light of defendant's failure to implement security policies); *In re Anthem*, 162 F. Supp. 3d at 992, 995 (same).

The CAC is replete with allegations that document the bargain between Plaintiffs and Ascension. For example, Plaintiffs allege Ascension's standard Notices of Privacy Practices acknowledges the obligation to "[m]aintain the privacy and security of your health information." CAC ¶¶ 37–38, that Plaintiffs relied on Ascension "to keep their Private Information confidential and securely maintained," *id.* ¶ 40, that Plaintiffs were required to give Private Information to Ascension to obtain healthcare services, which they expected Ascension to safeguard in return *id.* ¶ 42, and many more allegations that Ascension failed to live up to those obligations, *id.* ¶¶ 46–51, *passim*. These are not the type of "thin" allegations that Ascension argues do not convey standing.

Here, Plaintiffs allege the contours of the direct bargain with Ascension and the weight of authority, supports the sufficiency of their allegations under Article III. *Compare* CAC ¶¶ 358–362 *with In re Marriott*, 440 F. Supp. 3d at 464 *and Smallman*, 638 F. Supp. 3d at 1189.

### E. PLAINTIFFS PLEAD THE REQUISITE INJURY AND CAUSATION RELATED TO THE RECEIPT OF HEALTHCARE.

Ascension's cybersecurity failings even compromised the medical care provided to Plaintiffs, which are tangible injuries supporting Article III standing. Five named Plaintiffs (Brown, Cunningham, Willis, Hayes, and Pitchers) experienced interruptions relating to treatments or prescriptions. CAC ¶¶ 162, 187, 200, 220, 243. And while Ascension complains that "medical

appointments are rescheduled all the time for a variety of reasons" routine rescheduling is entirely different than being unable to provide patient care whatsoever. *See* Mot. at 28.

Ascension bases its arguments on cases outside of the data breach context. Both cases cited by Ascension deal with *pro se* plaintiffs. The *Crumb v. Orthopedic Surgery Med. Grp.*, opinion was at the summary judgment stage. 2010 WL 11509292 (C.D. Cal. Aug. 18, 2010). In *Thomas v. Baker*, the court had previously dismissed the complaint for failure to allege he had personally been injured, and it essentially reached the same conclusion on plaintiff's amended complaint. 2020 WL 6870994 (D. Mass. Nov. 23, 2020). Here, Plaintiffs are granted the same protections as they would receive under a 12(b)(6) analysis, namely the "Court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Mackey*, 2021 WL 3363174, at *1 (cleaned up). At this stage, "this Court must presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at *6 (cleaned up); *see also, e.g.*, *In re Marriott*, 440 F. Supp. 3d at 467 ("While Defendants may ultimately show, after the opportunity for discovery, that the alleged injuries are not caused by their data breach, it is premature to dismiss Plaintiffs' claims on grounds of traceability."). Plaintiffs have sufficiently alleged that their injuries, i.e., interruptions to their medical care, resulted from Ascension's failure to implement reasonable safeguards and nothing more is required at this stage. *See, e.g.*, *Finesse Express, LLC v. Total Quality Logistics, LLC*, 2021 WL 1192521, at *5 (S.D. Ohio Mar. 30, 2021) ("While Defendant is free to litigate at a later stage of the litigation whether the data breach caused Plaintiffs' fraudulent transactions, this debate has no bearing on standing to sue." (cleaned up)).

## II. CHOICE OF LAW

Plaintiffs agree that for the purposes of the Motion to Dismiss it is not necessary for this Court to conduct a choice of law analysis. Plaintiffs' claims stand under Missouri law or

any other potentially applicable state law.

## III. ASCENSION'S ARGUMENTS ATTACKING PLAINTIFFS' NEGLIGENCE CLAIMS ARE MERITLESS.

Ascension invokes the economic loss doctrine as a bar to negligence claims in "some" states, citing cases it identifies as pertaining to Missouri, Michigan, Indiana, and (obliquely) California. Mot. at 29 & notes 13, 14. It also urges that Missouri and Florida have not recognized a "general" duty to safeguard against cyberattack. The short arguments it does make on these subjects, as well as negligence *per se*, are meritless.

### A. THE ECONOMIC LOSS DOCTRINE DOES NOT APPLY.

The economic loss doctrine primarily applies where damages are contractual in nature. *See Mackey*, 2021 WL 3363174, at *7. Although Plaintiffs have alleged both an express and implied breach of contract, Ascension disputes the existence of both. And Plaintiffs' negligence claim is not strictly contractual in nature. Ascension's duties arise out of the parties' special relationship and the foreseeability of harms stemming from data breaches.

In Missouri, the economic loss doctrine does not apply "where there is a special relationship between the parties." *Id.* at *8. That special relationship can arise "when one entrusts himself to the protection of another and relies upon that person to provide a place of safety." *Id.* at *6 (citation omitted). The physician-patient relationship is one such relationship. *Richardson v. Rohrbaugh*, 857 S.W.2d 415, 418 (Mo. App. 1993).[10] Plaintiffs are all current or former patients of Ascension. As such, they have a special relationship with Ascension. As a condition of receiving

---

[10] This relationship has also been recognized in Florida. *See Pollack v. Cruz*, 296 So.3d 453, 460 (Fla. 4th Dist. Ct. App. 2020) (noting that "recognized special relationships include . . . hospitals toward their patients") (citation omitted); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F.Supp.3d 1359, 1365 (S.D. Fla. 2017) ("[H]ealth care providers possess a very high duty to protect consumer data residing on their networks and therefore a serious potential level of loss exposure.") (citation omitted).

medical care, Plaintiffs provided their Private Information to Ascension and relied on Ascension to protect their Private Information. Thus, the economic loss doctrine should not apply. *See id.*; *see also J.J. ex rel. C.W. v. Poplar Bluff Reg'l Med. Ctr., LLC*, 675 S.W.3d 259, 266 (Mo. App. 2023) (physicians owe fiduciary duty of confidentiality).

## IV. PLAINTIFFS' NEGLIGENCE *PER SE* CLAIMS CAN BE BASED ON THE FEDERAL TORTS CLAIMS (FTC) ACT AND HIPAA.

Violation of a statute supports negligence *per se* when: (1) "designed to protect against the type of accident the [defendant's] conduct causes"; and (2) plaintiff is "within the class of persons the statute is designed to protect." Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 14 (Am. L. Inst.);[11] *see also* CAC ¶¶ 319-25. Ascension does not dispute the existence of these elements. Rather, it insists that the statute must create a private cause of action.[12] This is wrong. Missouri courts recognize that actions for negligence *per se* can be based on violations of HIPAA. *See J.J. ex rel. C.W.*, 675 S.W.3d at 266 ("If a defendant health care provider does not comply with its duties under HIPAA and HITECH, and the plaintiff is injured as result of a statutory violation, then the defendant is liable for negligence *per se*.").[13]

Ascension also asserts that Arkansas, Kentucky, and Michigan do not recognize negligence

[11] *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005) (violation of federal statutes and regulations "is commonly given negligence per se effect in state tort proceedings") (citation omitted). *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), cited by Ascension, involved a suit to enforce government contract price ceilings by a non-party, inconsistent with the statutory scheme. *Id.* at 114, 118.

[12] Conflating negligence *per se* with a private right of action is a common mistake. *See J.J.'s Bar & Grill, Inc. v. Time Warner Cable Midwest, LLC*, 539 S.W.3d 849, 866 n.13 (Mo. App. 2017) (noting "difference between whether a statute creates a private right of action . . . and whether a statute . . . support[s] recovery on a theory of negligence *per se*").

[13] Similarly, Missouri courts and other state courts generally have no problem using federal statutes as the standard of care for state-law claims for negligence *per se*, including the FTC Act. *See Baldwin*, 2021 WL 4206736, at *6 (refusing to dismiss a negligence *per se* claim based on the FTC Act); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 4077–08 (E.D. Va. 2020); *First Choice Fed. Credit Union v. Wendy's Co.*, 2017 WL 9487086, at *4 (W.D. Pa. Feb. 13, 2017).

*per se* claims, "at least as to federal statutes." Mot. at 31 fn.17. In both Arkansas and Michigan, statutes create a duty and standard of care where they are designed to protect the class of which plaintiff is a member. *See Jackson v. Cadillac Cowboy, Inc.*, 986 S.W.2d 410, 413 (Ark. 1999) (holding that a "duty of care and the attendant standard of care may be found in a statute that is silent on civil liability"); *Wood v. City of Detroit*, 917 N.W.2d 709, 714 n.3 (Mich. Ct. App. 2018). And both treat statutory violations as evidence of negligence. *See Franco v. Bunyard*, 547 S.W.2d 91, 93 (Ark. 1977); *Randall v. Mich. High Sch. Athletic Ass'n*, 965 N.W.2d 690, 703 (Mich. Ct. App. 2020).

In Kentucky, negligence *per se* is codified by statute. Ky. Rev. Stat. § 446.070. Plaintiffs agree that the Kentucky Supreme Court has held that this provision does not include claims based on federal statutes. However, it *also* holds that courts may use federal law to inform a common law duty and standard of care. *T&M Jewelry, Inc. v. Hicks*, 189 S.W.3d 526, 530–32 (Ky. 2006). *T&M Jewelry* supports Plaintiffs' claims. And Ascension provides no analysis to assert otherwise.

## V. PLAINTIFFS PLAUSIBLY ALLEGE EACH ELEMENT OF THEIR CONTRACT-BASED CLAIMS.

### A. BREACH OF EXPRESS CONTRACT (COUNT III)

Plaintiffs sufficiently plead each element of their breach of express contract claim. To establish a valid contract, Plaintiffs must plead "offer, acceptance, and bargained for consideration." *Baldwin*, 2021 WL 4206736, at *7. Here, Plaintiffs allege that Ascension offered to provide healthcare services. Plaintiffs accepted the offer by receiving healthcare services and providing payment and their Private Information to Ascension. And Plaintiffs allege they received healthcare services from Ascension. CAC ¶ 333; *see also e.g.* CAC ¶ 210. As such Plaintiffs have adequately alleged the existence of a valid contract between the parties.

"To establish breach of contract under Missouri law, there are four elements: (1) the

existence of an enforceable contract; (2) the presence of mutual obligations under the contract; (3) failure to perform an obligation specified in the contract; and (4) damages." *Baldwin*, 2021 WL 4206736, at *7 (citation omitted). Plaintiffs allege that: Ascension promised to "[m]aintain the privacy and security of [Plaintiffs'] health information." CAC ¶ 38 & n.15. And that Plaintiffs would not have provided their Private Information had they known that Ascension's data security was inadequate. *See e.g.*, ¶173. Ascension breached its contractual obligations by failing to use safe and secure systems to protect Plaintiffs' Private Information. *Id.* ¶ 335. And Plaintiffs were damaged as a result of this breach.[14]

The cases Ascension cites are distinguishable. First, unlike in *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017), Ascension's promises are legally binding obligations, not merely recitals "describing the surrounding circumstances and the objectives of the parties." *See State ex rel. Missouri Highway & Transp. Comm'n v. Maryville Land P'ship*, 62 S.W.3d 485, 492 (Mo. Ct. App. 2001). Indeed, Ascension's Privacy Practices make clear, "[Ascension] ***must follow the practices described in this Notice*** and provide [Plaintiffs] a copy of it." *See Joint Notice of Privacy Practices*, Ascension St. Vincents (Jan. 1, 2023) (emphasis added).[15]

---

[14] Plaintiffs plausibly allege Ascension breached its contractual obligations. *See, e.g.*, *Baldwin*, 2021 WL 4206736, at *7 (quotations omitted) (allegations that defendant "promised to maintain safeguards to protect customers' PII, but breached this contract by failing to maintain such safeguards" state breach of express contract claim); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 599 (N.D. Ill. 2022) (allegations that defendant's privacy policy promised to restrict access to PII, and data breach resulted in a breach of that promise, state breach of express contract claim).

[15] Available at https://web.archive.org/web/20240613004455/https:/healthcare.ascension. org/-/media/healthcare/npp/alabama/al_ascension-st-vincents_english.pdf (last accessed Dec. 13, 2024). In ruling on a motion to dismiss under Rule 12(b)(6), courts may consider "matters incorporated by reference or integral to the claim"—*i.e.*, the Notices of Privacy Practices forming the basis for Plaintiffs' breach of express contract claim—"without converting the motion into one for summary judgment." *Dittmer Properties, L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (citation omitted).

Moreover, the *Kuhns* plaintiff did not allege "a single applicable law and regulation that Scottrade allegedly breached regarding its data security practices." *Kuhns*, 868 F.3d at 717. Here, in contrast, Plaintiffs allege Ascension violated multiple, specific data security obligations under HIPAA, along with failing to use reasonable safeguards like firewall tools, privileged access tools, anti-malware program scans, and more. CAC ¶¶ 88, 92, 96. Thus, Plaintiffs' allegations distinguish *Kuhns* for this additional reason. *See Baldwin*, 2021 WL 4206736, at *7 n.4 (allegations that defendant violated specific HIPAA regulation distinguish *Kuhns* and state breach of express contract claim); *Hall v. Centerspace, LP*, 2023 WL 3435100, at *6 (D. Minn. May 12, 2023) (allegations that defendant failed to comply with industry standards or follow FTC guidelines for data security distinguish *Kuhns* and state breach of contract claim).

The remaining authorities Ascension cites for this argument do not support it either. *See e.g.*, *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1199 (D.N.D. 2004) (involved a "broad statement[] of company policy" posted on the airline-defendant's website); *In re Zappos.com, Inc.*, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (plaintiffs alleged only unilateral statement on merchant's website). And neither *Mednax* nor *Johnson* involved a breach of *express* contract claim based on a defendant's privacy policy. *In re Mednax*, 603 F. Supp. 3d at 1221 (only breach of implied contract claim alleged);[16] *Johnson v. Yuma Reg'l Med. Ctr.*, 2024 WL 4803881, at *10 (D. Ariz. Nov. 15, 2024) (same). Although Plaintiffs do not concede that a contract cannot be based

[16] And in any event *Mednax* is not controlling. Courts in this circuit have recognized that breach of express contract claims can be based in part on HIPAA. *See Weisenberger*, 597 F.Supp.3d at 1365-66 ("The promise that was allegedly made by the defendant was; If you give us your PII, we will keep it secure pursuant to our duty under HIPAA. Thus, the plaintiff did something she was not otherwise required to do-give the defendant her PII- and the defendant received something it was not otherwise entitled to receive-the plaintiff's PII. It is immaterial that the defendant was required by HIPAA to keep the plaintiff's PII secure for legally sufficient consideration to exist.") (cleaned up).

on HIPAA, Ascension's argument that its Notice of Privacy Practices only "informs patients of their rights under federal law" is a factual question better left to a jury. Mot. at 32; *Mackey*, 2021 WL 3363174, at *9.

Ascension's argument that Plaintiffs do not claim they read, understood, or "actually relied upon" the Notices of Privacy Practices likewise misses the mark. *See* Mot. at 32. Under Missouri law, actual reliance is not an element of a breach of contract claim. *See Baldwin*, 2021 WL 4206736, at *7 (cleaned up) (noting that there are four elements for a breach of contract claim in Missouri: "(1) the existence of an enforceable contract; (2) the presence of mutual obligations under the contract; (3) failure to perform an obligation specified in the contract; (4) damages."). Here, all Plaintiffs allege they received Ascension's Notice of Privacy Practices in connection with services obtained from Ascension and provided their Private Information to Ascension "subject to its Notice of Privacy Practices." CAC ¶¶ 101, 114, 127, 141, 154, 168, 182, 197, 211, 226, 240, 255, 268, 333. "[I]n the absence of fraud or other wrongdoing, a party who signs or accepts a written contract is presumed to know its contents and to assent to them." *Mead v. Moloney Sec. Co.*, 274 S.W.3d 537, 542 (Mo. Ct. App. 2008). Thus, drawing all inferences in Plaintiffs' favor, the CAC sufficiently alleges Plaintiffs' assent to Ascension's Notices of Privacy Practices. *See McNealy v. City of St. Louis, Missouri*, 2024 WL 4817299, at *3 (E.D. Mo. Nov. 18, 2024).

### B. Breach of Implied Contract (Count IV)

Plaintiffs state a claim for breach of implied contract. They allege Ascension "solicited, offered, and invited [Plaintiffs] to provide their Private Information as part of [Ascension's] regular business practices," and Plaintiffs "accepted [Ascension's] offers and provided their Private Information to [Ascension]" as a condition of receiving healthcare services. CAC ¶¶ 42, 338. Through this conduct, Plaintiffs and Ascension "entered into implied contracts. . . by which [Ascension] agreed to safeguard and protect such information." *Id.* ¶ 340. Ascension breached

these implied contracts by, *inter alia*, failing to safeguard and protect Plaintiffs' Private Information through adequate security systems and data security practices. *Id.* ¶ 351. These allegations plausibly plead Ascension's breach of implied contracts to safeguard Plaintiffs' Private Information. *See Mackey*, 2021 WL 3363174, at *9 (denying motion to dismiss breach of implied contract claim based on defendant's failure to safeguard PII it collected from plaintiff). This Court has held allegations similar to Plaintiffs' here state a breach of implied contract claim. *Mackey*, 2021 WL 3363174, at *9. In doing so, the Court "broadly agreed … it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to the protect the information sufficiently.'" *Id.* (cleaned up).[17]

Finally, Plaintiffs sufficiently allege the consideration element of their implied contract claim. For one, they allege they "paid money to Ascension with the reasonable belief and expectation that Ascension would use part of its earnings to obtain adequate data security." CAC ¶ 346. They further allege Ascension collects, creates, and stores Private Information in the course of providing services to patients, and "derive[s] a benefit from" that data. *Id.* ¶¶ 42–45. At this stage, these allegations plausibly establish consideration underlying Ascension's implied agreement to safeguard Plaintiffs' Private Information. *Mohsen*, 2024 WL 2080177, at *8.

---

[17] Other courts within the Eighth Circuit have ruled the same, holding allegations mirroring Plaintiffs' here state a breach of implied contract claim. *See, e.g.*, *Mohsen v. Veridian Credit Union*, --- F.Supp.3d ---, 2024 WL 2080177, at *8 (N.D. Iowa, May 9, 2024) (plaintiff's exchange of PII for defendant's services "plausibly forms the basis of an implied contract: for data security"); *Hall*, 2023 WL 3435100, at *6 (denying motion to dismiss given "the reasonable inference that requiring someone to provide . . . sensitive information as part of a transaction carries with it the recipient's implied agreement to reasonably safeguard it"); *Hiscox Ins. Co. Inc. v. Warden Grier, LLP*, 474 F. Supp. 3d 1004, 1010 (W.D. Mo. 2020) (allegations that defendant "requested, received, created, and/or otherwise obtained" PII and PHI "plausibly give rise to the inference that [defendant] took on an obligation . . . to safeguard the PI"). In line with these authorities, Plaintiffs plausibly plead Ascension's implied promise to safeguard their Private Information.

In sum, Plaintiffs plausibly allege each element of their contract claims arising from Ascension's express and implied promises to safeguard the Private Information it required Plaintiffs provide. Ascension's motion to dismiss these well-plead contract claims must be denied.

**VI. UNJUST ENRICHMENT**

Under Missouri law, a defendant is unjustly enriched when: (1) "[the plaintiff] conferred a benefit on the defendant; (2) the defendant appreciated the benefit, and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. 2011) (citation omitted). Here, Plaintiffs allege they conferred a benefit upon Ascension when they provided PII, PHI, and payment. CAC at ¶¶ 215-28. Ascension appreciated or had knowledge of the benefits conferred upon them, while simultaneously benefiting from the receipt of PII and PHI, as it was used to facilitate Ascension's services. Even more, payment for receipt of health care services inherently implies protection of the patient's (Class Members') health care information under both state and federal laws and regulations

Ascension reasonably should have spent on data security the money necessary to secure the Class Members' Private Information. CAC at ¶¶ 215-6. These factual allegations satisfy each element of the Class Members' unjust enrichment claim. Ascension mistakenly challenges these allegations by trying to argue whether they are true: first, that there was no benefit unjustly retained because any payment "to Ascension was in exchange for medical services, not data security." Mot. at 34. However, providing their data alongside payment for services conferred a benefit on Ascension; Ascension appreciated the benefit; and Ascension accepted and retained the benefit under inequitable and/or unjust circumstances. *Hargis*, 357 S.W.3d at 586. As outlined above, Plaintiff has sufficiently alleged those facts.

As for Ascension's second argument, providing Private Information to Ascension is not merely an "incidental benefit." Mot. at 35. The proposed class members did not give their PII or

PHI gratuitously, they provided it along with payment as a condition of receiving medical care and other services. Stated another way, by conditioning its services on receiving *both* Private Information and payment, Ascension would not have received a benefit at all unless it also received Private Information. Accepting the CAC's properly pleaded facts as true, giving them their broadest intendment, and construing all allegations favorably to the pleader, the proposed Class Members have sufficiently alleged an unjust enrichment claim. *See In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 715 (D. Minn. 2023) (holding that Plaintiffs sufficiently alleged they conferred a benefit to Defendant in the form of PII); *see also Mohsen*, 2024 WL 2080177, at *8 (holding that providing PII in addition to payment for services satisfies the requirement of Defendant being enriched by the receipt of a benefit).

## VII. INVASION OF PRIVACY

Plaintiffs have stated claims for both intrusion upon seclusion and the public disclosure of private facts, and Ascension has not met its burden to show otherwise.

### A. PLAINTIFFS HAVE STATED A CLAIM FOR INTRUSION UPON SECLUSION

Ascension first contends that Plaintiffs' claim for intrusion upon seclusion must fail because the invasion of privacy torts require intentional conduct, and Plaintiffs supposedly cannot plausibly allege intentional conduct. Mot., at 36. Ascension significantly overstates the requirement. Indeed, courts in data breach litigation have held a "defendant's actions may be intentional when the Defendant acts with such reckless disregard for the privacy of the plaintiff that the actions rise to the level of being an intentional tort." *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 819 (E.D. Ky. 2019). Regardless, Ascension fails to engage with the definition of intentionality under long-standing tort law. Indeed, "intent" under the Restatement includes situations in which the alleged tortfeasor was substantially certain of the consequences of its action. Restatement (Second) of Torts § 8A.

Here, Plaintiffs have alleged that Ascension failed to implement reasonable cybersecurity measures. CAC. ¶¶ 3, 8, 51–52. Moreover, Plaintiffs have alleged in significant detail that data breaches in the healthcare industry are ubiquitous, such that any company paying even a modicum of attention to the risks it faces would have been substantially certain that a failure to implement reasonable cybersecurity would lead to a data breach—just as happened here. *Id.* ¶¶ 67–76. Notwithstanding that Ascension failed to engage with this theory of the claim, Plaintiffs plausibly alleged that Ascension's conduct was intentional within the meaning of the Restatement. *Id.* ¶ 381.

Second, Ascension ambiguously claims that intrusion upon seclusion is not a good fit for data breach litigation and that public disclosure of private facts is a better choice. The argument, though not developed, appears to be that Ascension did not obtain Plaintiffs information in an offensive manner, so it did not intrude at all. But Plaintiffs' theory is that Ascension permitted the intrusion by failing to implement reasonable security with substantial certainty that it would lead to the intrusion. Indeed, intrusion upon seclusion claims are not novel in data breach litigation. Ascension is sufficiently on notice of a plausible claim against it. *E.g.*, *McKenzie*, 369 F. Supp. 3d at 819; *Flores v. Aon Corp.*, 242 N.E.3d 340, 359–60 (Ill. App. Ct. 2023); *Lurry v. PharMerica Corp.*, 2024 WL 2965642, at *6 (W.D. Ky. June 12, 2024) ("Courts have repeatedly held that being aware of the risk of data breaches and failing to implement appropriate policies is sufficient to state a claim for intrusion upon seclusion.").[18]

### B. PLAINTIFFS HAVE STATED A CLAIM FOR PUBLIC DISCLOSURE OF PRIVATE FACTS

Ascension moves for dismissal of Plaintiffs' claim for public disclosure of private facts on

---

[18] Ascension also contends that intrusion upon seclusion in Indiana, Texas, and Wisconsin requires a physical intrusion. The argument is irrelevant. Although some of Plaintiffs' harms are intangible, the intrusion was to a physical space. The hack was performed on Ascension's information systems, which is a physical place consisting of servers, computers, and other systems. Ascension conflates the intrusion with the harm felt by the intrusion.

the argument that Plaintiffs' have failed to allege intentional conduct or that their private information was publicized. Neither argument withstands scrutiny.

First, as explained above, Plaintiffs have properly alleged the existence of intentional conduct under the traditional definition of intent in the restatement. CAC ¶ 381; Restatement (Second) of Torts § 8A.[19] Second, Plaintiffs have easily satisfied any need to allege publication of their private information. Ascension ignores that Plaintiffs have already begun receiving alerts that their information was leaked to the Dark Web. CAC ¶ 379. Thus, Plaintiffs have alleged the publication of their private information to the underground marketplace wherein their data is sold to even more identity thieves. *See id.* ¶¶ 11, 73. But regardless, Ascension again fails to engage with a critical aspect of Plaintiffs' claim—that even if the number of identity thieves to whom the information was published is small, they are the exact people for whom the required cybersecurity measures are intended to protect Plaintiffs from, such that those identity thieves are in a special relationship with Plaintiffs. *Id.* ¶ 379. Indeed, publication to individuals in a special relationship with Plaintiffs is sufficient to establish the claim. *Miller v. Motorola, Inc.*, 560 N.E.2d 900, 903 (Ill. Ct. App. 1990) ("We adopt the position of the above authorities that the public disclosure requirement may be satisfied by proof that the plaintiff has a special relationship with the 'public' to whom the information is disclosed. Plaintiff's allegation that her medical condition was disclosed to her fellow employees sufficiently satisfies the requirement that publicity be given to the private fact.").

The rationale is that the invasion of privacy "may be just as devastating to the person even

[19] Even beyond the substantial certainty that Ascension acted with and fails to engage with, Courts have recognized that a "defendant's actions may be intentional when the Defendant acts with such reckless disregard for the privacy of the plaintiff that the actions rise to the level of being an intentional tort." *McKenzie*, 369 F. Supp. 3d at 819.

though the disclosure was made to a limited number of people." *Id.*[20] It is certainly enough to place Ascension on notice of a plausible claim against it.[21]

## VIII. STATUTORY CLAIMS

Plaintiffs plausibly state claims under the various state consumer protection laws.

### A. PLAINTIFFS HAVE ALLEGED ACTIONABLE OMISSIONS AND MISREPRESENTATIONS.

Plaintiffs have plausibly alleged claims for fraudulent, deceptive, and unfair omissions as violations of the state consumer protection acts at issue. Plaintiffs do not agree that their consumer protection claims are governed by Rule 9(b)'s heightened pleading requirements. Claims for omissions and misrepresentations under consumer protection statutes do not *per se* sound in fraud. *Perdue v. Hy-Vee, Inc.*, 455 F. Supp.3d 749, 768-69 (C.D. Ill. 2020) (holding alternatively that the data breach plaintiffs satisfied Rule 9(b) as well); *Sweet v. BJC Health Sys.*, 2021 WL 2661569, at *6 (S.D. Ill. June 29, 2021) (same). The Court should reject Ascension's theory that Rule 9(b) governs. Nevertheless, as in *Purdue*, Plaintiffs here meet the Rule 9(b) requirements as well.

Rule 9(b) governs claims sounding in fraud and is satisfied where the omitted information is identified and the complaint states how or when the concealment occurred. Rule 9(b) requires that averments of fraud be pleaded with particularity, but that "does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage in the case, to potentially damaging allegations." *Delmar Fin. Co. v. Ocwen Loan Servicing, L.L.C.*, 2019 WL 2075893, at *3 (E.D. Mo. May 10, 2019)

---

[20] *See also Lozier v. Quincy Univ. Corp.*, 2019 WL 409368, at *9 (C.D. Ill. Jan. 31, 2019) ("The publicity requirement can be met by alleging that the disclosure was made to a small number of people who have a special relationship with the plaintiff[.]"); *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 112 (Ind. Ct. App. 2014); *Hill v. MCI WorldCom Commc'ns, Inc.*, 141 F. Supp. 2d 1205, 1212 (S.D. Iowa 2001).

[21] To the extent that other courts have dismissed these claims but have not engaged with these arguments, Plaintiffs here cannot be faulted for arguments not presented there.

(citing *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)). "The level of particularity required depends on . . . the nature of the case and the relationship between the parties." *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).

Even when Rule 9(b) applies, a more lenient standard is permitted when Plaintiffs allege misrepresentation by omission. *Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 697 (S.D. W.Va. 2014). In non-disclosure cases, plaintiffs do not have to "specify the time, place, and specific content of an omission as precisely as would a … false representation claim" under Rule 9(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) (citation omitted); *Burns v. Toyota Motor Sales, U.S.A., Inc.*, 2015 WL 11117157, *4 (W.D. Ark. April 23, 2015) (finding "that a strict 9(b) analysis should not apply to allegations of omissions because a plaintiff cannot be required to specifically identify the precise time, place, and content of an event that did not occur.") (internal quotations omitted). As discussed more fully below, Count IV (for violations of state consumer protection acts) satisfies Rule 9(b).

Ascension contends that Plaintiffs have failed to plead with particularity any actionable misrepresentations or omissions.[22] Not so. Plaintiffs have placed Ascension on notice of: (1) Who: Defendants (CAC ¶¶ 1-15); (2) Where: in Missouri and where each plaintiff resided (CAC ¶¶ 16-32); (3) When: when Plaintiffs provided their Private Information to Ascension for medical

---

[22] The Federal Trade Commission and the various state consumer protection laws, which draw upon it, prohibit "unfair or deceptive acts or practices." 15 U.S.C. § 45(a); 815 Ill. Comp. Stat. 505/2; Mich. Comp. Laws § 445.903; Mo. Stat. § 407.020; Fla. Stat. § 501.204(1); Wis. Stat. § 100.18; 15 Okla. St. § 753. The FTC has enforced Section 5 against numerous companies when their deficient cybersecurity led to data breaches and exposed sensitive information. See *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602 (D.N.J. 2014), *aff'd* 2015 WL 4998121; 76 Fed. Reg. 7213, 7313-14 (Feb. 9, 2011) (FTC filed and settled complaints against several companies based on their failure to "[d]evelop and disseminate comprehensive written information security policies[,] . . . assess the risks of allowing end users with unverified or inadequate security to access consumer reports through their online portals[,] . . . and [] take appropriate action to correct existing vulnerabilities or threats to personal information in light of known risks").

services, in reliance on Ascension's failure to disclose these material facts (CAC ¶¶ 1-15, 42); (4) What: omitted that Ascension failed to maintain an adequate data security system to reduce the risk of data breaches while representing that such protections were in place (CAC ¶¶ 1-15, 38, 42); and (5) How: Plaintiffs provided their Private Information, in reliance on Ascension failure to disclose these material facts (CAC ¶ 42).

**1. Plaintiffs' have plausibly alleged reliance**

Contrary to Ascension's argument, Plaintiffs alleged reliance on Ascension's omissions and misrepresentations regarding the sufficiency of its cybersecurity measures. Indeed, each Plaintiff alleged that they would not have entrusted Ascension if they knew it failed to adequately protect the privacies of their lives.[23] Ascension attempts to draw the Court into a fact-finding mission, but the bottom line is that Plaintiffs have placed Ascension on notice of the nature of its claims against it. At this stage, that is all that is required.[24] *E.g.*, *Mathioudakis v. Conversational Computing Corp*., 2012 WL 4052316, *5 (S.D. Ind. Sept. 13, 2012) (holding that "reliance and whether it was reasonable are questions of fact that are not appropriate for determination at the motion to dismiss stage").

Anyone ever visiting doctor's office sits down with a clipboard asking for information, signs a financial responsibility agreement, and gets a HIPAA privacy statement. Ascension does not suggest the moment a sale occurs, but it lacked adequate security and omitted and/or concealed material facts related thereto at all points during the relationship with Plaintiffs, including post-

[23] *Id.*

[24] Defendant attempts to distract by questioning whether a particular Plaintiff remembers reading the Notice of Privacy Practices. But Defendant fails to engage with Plaintiffs' theory of the case, which is that Defendant's omissions and failures to inform Plaintiffs of its inadequate security stands in stark contrast to its representations in the Notice of Privacy Practices. Indeed, no Plaintiff can read an omission, and Plaintiffs have alleged that they would not have chosen to use Defendant's services if they had known of the inadequate practices. *Id.*

discharge failure to reveal the Data Breach. In addition, Plaintiffs allege that data security services were included in a purchase ***and*** that defendant solicited them to provide Private Information in exchange for money.[25] Such allegations were not present in the cases on which Ascension relies.[26]

### B. PLAINTIFFS HAVE ALLEGED THAT THE VIOLATIONS OF CONSUMER PROTECTION STATUTES SUBSTANTIALLY OCCURRED IN THOSE STATES

Ascension curiously argues that Plaintiffs' FDUTPA, ICFA, and OCPA claims should be dismissed as inconsistent with Plaintiff's allegations that a lot of Ascension's conduct occurred in Missouri. Not so. Plaintiffs' claim under the FDUTPA is made on behalf of Plaintiff Brown and the Florida Subclass. Plaintiffs' claim under the ICFA is made on behalf of Plaintiffs Boyden and Negron and the Illinois subclass. Ascension's argument pretends that these claims are made on behalf of all Plaintiffs. It is common sense that the allegations on behalf of the Illinois subclass occurred substantially in Illinois, while allegations on behalf of residents of other states occurred substantially in those states. The reasonable inference is that Ascension, which is a large healthcare system operating in those subclass states, *see* CAC ¶ 36, provided services to the subclass in those

---

[25] *See, e.g., id.* at ¶ 346 ("Plaintiffs and Class Members paid money to Ascension with the reasonable belief and expectation that Ascension would use part of its earnings to obtain adequate data security."), ¶ 338 ("Defendants solicited, offered, and invited Class Members to provide their Private Information as part of Defendants' regular business practices."), ¶ 347 (referring to "implied contract … to keep [Plaintiffs'] information reasonably secure"); *see also Mackey*, 2021 WL 3363174 at *9 (finding that plaintiff "plausibly alleged the existence and breach of an implied-in-fact contract requiring [Defendant] to adequately secure its employees' PII").

[26] *See Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1058 (E.D. Mo. 2009) (noting that "plaintiff's MMPA claim faile[d] to plead that plaintiff paid anything of value for the purchase"). And in two of the cases, any statements about whether the plaintiff stated a cause of action were dicta. *See id.* at 1053 (dismissing MMPA claim only after already finding (incorrectly) that plaintiffs lacked standing to assert it); *Kuhn's*, 868 F.3d at 719 (already found that MMPA claim did not comply with Rule 9(b)). In *In re Mednax*, plaintiffs alleged "no invitation or solicitation by Defendants indicating that Defendants implicitly assented to secure their PHI and PII in exchange for remuneration." 603 F.Supp.3d at 1221. The court recognized that "[m]any federal courts have held that an implied contract to safeguard customers' sensitive data could be reasonably found to exist in transactions where consumers are solicited or invited to provide personal information in exchange for a good or service." *Id.* This Court has held similarly. *Mackey*, 2021 WL 3363174 at *9.

subclasses' states of residence and thus collected data in those states without informing them of their inadequate cybersecurity practices, causing those Plaintiffs' harm to occur in their states of residence. That is enough at this stage to place Ascension on notice of a plausible claim. *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009).[27]

### C. PLAINTIFFS' OCPA CLAIM IS NOT PREEMPTED

Ascension asserts that Plaintiffs' OCPA claim is subject to a safe harbor and is thus preempted. But *Mednax* and *Thomas* do not address prayers for monetary damages. Moreover, the reasoning of these cases is at odds with the later Oklahoma Court of Civil Appeals decision in *Robinson v. Sunshine Homes, Inc.*, 2012 OK CIV APP 87, ¶ 30-32 (2010), which rejected the application of the safe harbor to an OCPA claim brought against a defendant regulated by the Used Motor Vehicle and Parts Commission. *Id.* The court explained that "the Commission is limited primarily to regulating licensing matters. There is no indication the regulatory activities of the Commission, which deal with grounds for suspension or revocation of licenses, extend to exempt Defendants from a lawsuit under the Act." *Id.* ¶ 31. Here, HIPAA provides no monetary redress to Plaintiffs, so HHS' regulatory activities cannot be used to exempt Ascension from the OCPA.

### D. PLAINTIFFS STATE CLAIMS UNDER THE MMPA

Ascension claims that the MMPA cannot be applied to "non-Missouri residents." Mot. at 44–45. Not so. Like here, the defendant in *State ex rel. Nixon v. Estes* operated in Missouri and the offending conduct occurred in Missouri. CAC ¶ 396. The court pointed to express statutory

---

[27] Ascension has misstated Florida law, as FDUTPA is not limited to the state of Florida. *See, e.g.*, *Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436, 439 (Fla. 4th DCA 2005) (upholding certification of a nationwide class of cruise travelers based upon the plaintiffs' deceptive trade practices claim); *Millennium Communications & Fulfillment, Inc. v. Office of the Attorney General, Dep't of Legal Affairs*, 761 So. 2d 1256, 1260–61 (Fla. 3rd DCA 2000) (finding that "FDUTPA does have applicability to the commercial transactions between Florida corporations and non-resident consumers.").

language and the Missouri Supreme Court's broad treatment of the MMPA to apply it to non-Missouri consumers. 108 S.W.3d 795, 801 (Mo. App. 2003). Ascension relies on *Hale v. Emerson Elec. Co,* 942 F.3d 401 (8th Cir. 2019), which does not aid it. The *Hale* Court distinguished *Estes* where "every part of the challenged transaction took place in a class member's home state." *Id*. at 404. Like in *Estes*, Plaintiffs here allege activity in Missouri, where Ascension is headquartered. CAC ¶ 396. That is enough.

Ascension also claims that "plaintiffs' alleged loss was not in relation to the purchase of data-security services." Mot., at 45. But under the MMPA, "Merchandise" includes services. Mo. Rev. Stat. § 407.010(4). An unlawful practice violates the MMPA "whether committed before, during or after the sale, so long as it was made 'in connection with' the sale." *Conway v. CitiMortgage, Inc*., 438 S.W.3d 410, 414 (Mo. 2014) (quoting § 407.020.1). All that is required is "a relationship" between sale and unlawful action. *See id.* at 14-15 (holding that a loan transaction includes not only extension of credit but a "bundle of related services"); *see also Jackson v. Barton*, 548 S.W.3d 263 (Mo. 2018) (holding that a collection lawyer hired by a dental practice could be subject to MMPA liability even though the plaintiff only purchased dental services, and the lawyer had nothing to do with those services). Neither Ascension nor the cases on which it relies consider how Missouri courts treat the "in connection with the sale" requirement. Here, Plaintiffs have alleged that data security was a necessary component of the sale of services, which it then failed to provide. CAC ¶¶ 395–99. Again, that is enough.

To the extent Ascension suggests the MMPA claim must be dismissed for lack of alleged reliance, it is wrong. Individual reliance is not required under the MMPA. *In re Smitty's/Cam 2 303 Tractor Hydr. Fluid. Mkt., Sales Pracs. and Prod. Liab. Lit.,* 2023 WL 9064606 at *17 (W.D. Mo. Dec. 13, 2023); *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009).

Plaintiffs expressly plead that their losses were caused by Ascension's unlawful practices and that those practices would cause a reasonable person to enter into the transactions resulting in damages. CAC ¶¶ 401, 405. Plaintiffs more than adequately plead a claim under the MMPA.[28]

### E. PLAINTIFFS' ADTPA CLASS CLAIM IS PROPER

Ascension next argues that Dunn's ADTPA claim can be brought only on . an individual basis because under the ADTPA, a "private class action" "is prohibited unless the claim is being asserted for a violation of Arkansas Constitution," which Dunn does not allege. Ark. Code § 4-88-113 (Mot. at 40 note 31). Nevertheless, as Plaintiffs are in federal court, Rule 23 controls over the ADTPA as Rule 23 is procedural in nature. *Mounce v. CHSPSC, LLC* 2017 WL 4392048, at *7 (W.D. Ark. Sept. 29, 2017); *see also, Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 409 (2010) (holding that Federal Rule of Civil Procedure 23 trumps any state law that is also procedural in nature and that conflicts with it).

### F. PLAINTIFFS' CLAIMS FOR LACK OF TIMELY NOTICE UNDER THE ILLINOIS, WISCONSIN, AND MICHIGAN STATUTES ARE PROPER

Ascension asserts that Plaintiffs cannot seek recovery for its gross and unreasonable delays in meeting its statutory notice requirements because some statutes may not provide for express private rights of action and because Ascension's delays were purportedly not unreasonable. First, Plaintiffs do not seek to bring claims solely under the data breach notification statutes. Instead, Plaintiffs bring these under the data breach notification statutes, and as part of their negligence and consumer protection claims. *See In re Fortra File Transfer Software Data Sec. Breach Litig.,* 2024

---

[28] Ascension's cases do not hold otherwise. *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1112 (N.D. Cal. 2021) dismissed certain state consumer fraud claims only "to the extent that these states identify loss causation with reliance." Missouri does not. *In re Am. Med. Collection Ag., Inc. Customer Data Sec. Breach Litig.,* 2021 WL 5937742, at *20, n. 38 (D.N.J. Dec. 16, 2021) did not address causation under the MMPA. *Id.* at *20-21. *Toben v. Bridgestone Retail Ops., LLC,* 2013 WL 5406463, at*2 (E.D. Mo. Sept. 25, 2013) likewise did not address it.

WL 4547212, at *16 (S.D. Fla. Sept. 18, 2024) (holding that if Plaintiff can bring an ICFA claim, they can seek recovery for an IPIPA violation); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1306-07 (S.D. Cal. 2020) (finding that consumers may bring a civil action to enforce a data breach notification claim through Michigan's consumer protection statute). Nevertheless, Ascension's argument still misses the mark. These statutes are silent on whether a private right exists, and Plaintiffs' claims should not be dismissed when the legislature did not expressly bar them. If the legislatures wanted to bar recovery for violations of the protections they created, then they certainly knew how to do so. *In re Equifax Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp.3d 1295, 1341-42 (N.D. Ga. 2019) (finding plaintiffs' claim survived because there was no authority in the WNUAPI prohibiting a private right of action); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp.3d 1154, 1170 (D. Minn. 2014) (finding plaintiffs' claim would not be dismissed because Wisconsin's statute was silent on enforcement).

Second, Ascension asserts that Plaintiffs have not alleged that it failed to timely notify. But every data breach notification statute in the country that references an express deadline requires notice with thirty to sixty days. Here, the Data Breach occurred at least by May 8, 2024. CAC ¶ 2. Yet, Ascension's own statement admits that notification letters were not sent out for over seven months.[29] Compared to the typical thirty to sixty days, Ascension's delay here was anything but reasonable.[30] Indeed, in arguing that the task of notification is "gargantuan" and thus it was not unreasonable, Ascension is asking this Court to making a finding of fact that is entirely inappropriate at this stage.

[29] https://about.ascension.org/cybersecurity-event (notice "will be mailed to those individuals directly and be delivered over the course of the next 2-3 weeks" from December 19, 2024).

[30] *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp.3d at 589 (finding that a 9-month delay implied the reasonable unreasonable); *In re Solara Med.*, 613 F. Supp. 3d at 1307 (finding that a 5-month delay was enough under MITPA).

Third, Ascension summarily asserts that Plaintiffs did not rely on and were not harmed by its failure to provide timely notice. The assertion makes no sense. Ascension is well aware that the credit monitoring it offers only comes when the notification letter is received. Indeed, Ascension has now sent out letters,[31] which is only required if Ascension determines that the recipients face a material risk of harm through identity theft or otherwise. Wis. Stat. Ann. § 134.98(2)(cm)(1); Mich. Comp. Laws Ann. § 455.72(1). In other words, Ascension determined that it had to tell affected persons about the Data Breach because they face a material risk of harm, and now is trying to pretend that they did not really need the notice in a timely manner.[32] That is the exact problem that Michigan, for example, sought to remedy when it passed its notification statute.[33]

### G. PLAINTIFFS HAVE PLAUSIBLY ALLEGED A BREACH OF CONFIDENTIALITY BASED ON THE WIS. STAT. § 146.81 *ET SEQ*.

Ascension, with little development, asserts that Plaintiffs Farrand and Radley failed to allege a plausible breach of confidentiality claim because they did not allege a knowing, willful, or negligent release of their health records—notwithstanding that the case is about Ascension's negligent and/or reckless conduct in light of its knowingly inadequate cybersecurity measures. The Court should reject this throwaway argument. Plaintiffs have already explained in the preceding

---

[31] https://about.ascension.org/cybersecurity-event ("Notice letters will be mailed to those individuals directly and be delivered over the course of the next 2-3 weeks.").

[32] Plaintiffs' material risk of identity theft or fraud is not far-fetched. Indeed, Plaintiff Radley suffered a bank account compromise post-breach, suffering large withdrawals that caused her to pay overdraft fees that have still not been reimbursed. CAC. ¶ 271. Allowing affected persons to properly protect themselves is an obvious core reason necessitating the statutes in the first instance.

[33] Michigan House Fiscal Agency Bill Analysis, S.B. 309, 93rd Legis. (Dec. 5, 2006) ("In October of 2004, ChoicePoint, a national data aggregating company, had the personal information of 145,000 individuals nationwide stolen from its database. However, the company did not report the theft of the information until four months later, leaving plenty of time for identify thieves to use the information to ruin the credit of the victims. Since that time, at least 35 states have enacted legislation requiring companies that maintain databases of personal information to notify affected residents in their states in a timely manner if the security of a database was compromised. Michigan has no such requirement.").

sections how they sufficiently alleged that Ascension acted negligently, thus causing the release of their information, including health information. *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 796 (W.D. Wis. 2019) (rejecting the same argument); *Dusterhoft v. OneTouchPoint Corp.*, 2024 WL 4263762, at *16 (E.D. Wis. Sept. 23, 2024) (same).

## IX. PLAINTIFFS HAVE PROPERLY NAMED ASCENSION HEALTH ALLIANCE AND ASCENSION TECHNOLOGIES

Again in summary fashion, with no support or development of the argument, Ascension asserts that two entities Plaintiffs named are improper—Ascension Health Alliance and Ascension – IS Inc. d/b/a Ascension Technologies. Not so. Such group pleading is permissible and is sufficient notice of Plaintiffs' claims because "Plaintiffs claim that each [] Defendant breached its [] duties in essentially the same manner." *Garrett v. Cassity*, 2010 WL 2540748, at *8 (E.D. Mo. June 17, 2010) (denying motion to dismiss on that ground). Moreover:

> *Twombly* and *Iqbal* may have refined notice pleading by emphasizing that legal conclusions couched as factual assertions do not satisfy Rule 8's requirements, but they did not go so far as requiring fact pleading under the Federal Rules of Civil Procedure.

*Id.* Requiring more than Plaintiffs have alleged at this stage as to each Defendant's specific role "would, in essence, amount to this Court applying fact pleading requirements to Plaintiffs' claims," in violation of Rule 8's standard. *Id.* Moreover, Ascension is simply wrong on the factual allegations. Plaintiffs assert that Ascension Health Alliance is the parent of both Ascension Health and Ascension Technologies. CAC ¶ 31. And Ascension Technologies provides information technology services to member entities of Ascension Health Alliance, who has ultimate responsibility for the various Ascension companies. *Id.* ¶¶ 31–32. As such, Ascension is on ample notice of the reasons that these entities are named.

## CONCLUSION

For the foregoing reasons, the Court should deny Ascension's Motion.

Date: January 6, 2025

Respectfully Submitted,


*/s/Norman E. Siegel*
Norman E. Siegel #44378 (MO)
Tanner J. Edwards #68039 (MO)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
siegel@stuevesiegel.com
tanner@stuevesiegel.com

John F. Garvey #35879 (MO)
Colleen Garvey #72809 (MO)
Ellen A. Thomas, #73043 (MO)
**STRANCH JENNINGS & GARVEY, PLLC**
701 Market Street, Suite 1510
St. Louis, Missouri 63101
Telephone: (314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

J. Gerard Stranch, IV # 23045 (TN)
Grayson Wells # 039658 (TN)
**STRANCH JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

***Interim Co-Lead Counsel***

Gary M. Klinger (*Pro Hac Vice)*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

Jeff Ostrow (Pro Hac Vice forthcoming)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 332.4200
ostrow@kolawyers.com

David M. Berger (Pro Hac Vice)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
dmb@classlawgroup.com

Maureen Brady, #57800 (MO)
**MCSHANE & BRADY, LLC**
4006 Central Street
Kansas City, MO 64111
Telephone: (816) 888-8010
mbrady@mcshanebradylaw.com

Don Downing, #30405 (MO)
**GRAY RITTER GRAHAM PC**
701 Market Street, Suite 800
St. Louis, MO 63101
Telephone: (314) 241-5620
ddowning@grgpc.com

Laurence D. King (Pro Hac Vice)
**KAPLAN FOX**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: (415) 772-4700
lking@kaplanfox.com

Sabita Soneji
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
ssoneji@tzlegal.com

Lynn Toops (Pro Hac Vice filed)
**COHEN & MALAD LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com

Tiffany Yiatris, #58197 (MO)
**CONSUMER PROTECTION LEGAL, LLC**
308 Hutchinson Road
Ellisville, MO 63011
Telephone: (314) 541-0317
tiffany@consumerprotectionlegal.com

***Attorneys for Plaintiffs and the Proposed Class***