## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| WILLIAM COTON, JENNIFER BUTLER, and TRAVIS BUTLER individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No: 4:24-cv-00669-JAR |
| vs. | ) ) | **JURY TRIAL DEMANDED** |
| ASCENSION HEALTH, | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT ASCENSION HEALTH'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD ........................................................................................................ 4

ARGUMENT ................................................................................................................... 4

I.      Choice Of Law ...................................................................................................... 4

II.     Plaintiffs' Stored Communications Act Claim Fails (Count One) ........................ 5

III.    Plaintiffs' Breach-Of-Fiduciary-Duty Claim Fails (Count Five)......................... 8

        A.      The Breach-Of-Fiduciary-Duty Claim Is Subsumed Within The
                Negligence Claim........................................................................................ 9

        B.      Plaintiffs Fail To Plead A Breach ......................................................... 10

        C.      Plaintiffs Fail To Plead Proximate Causation ....................................... 12

        D.      Plaintiffs Fail To Plead Cognizable Damages ...................................... 12

IV.     Plaintiffs Lack Standing, And Their Negligence, Breach Of Implied Contract, And
        Unjust Enrichment Claims Fail (Counts Two, Three, And Four).................................... 15

CONCLUSION............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdelhady v. George Washington Univ.*,
  2022 WL 17364618 (D.D.C. Dec. 1, 2022)....................................................................14

*Amburgy v. Express Scripts, Inc.*,
  671 F. Supp. 2d 1046 (E.D. Mo. 2009)........................................................................13

*Andersen Consulting LLP v. UOP*,
  991 F. Supp. 1041 (N.D. Ill. 1998) ...............................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................4

*Aspen Am. Ins. Co. v. Blackbaud, Inc.*,
  624 F. Supp. 3d 982 (N.D. Ind. 2022) ........................................................................12

*Attias v. CareFirst, Inc.*,
  365 F. Supp. 3d 1 (D.D.C. 2019) ...........................................................................14, 15

*Baugher v. Gates Rubber Co.*,
  863 S.W.2d 905 (Mo. Ct. App. 1993)...........................................................................14

*Beasley Ins. Co., Inc. v. Brown & James, P.C.*,
  2019 WL 2285916 (E.D. Mo. May 29, 2019) ..............................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................4

*Brandt v. Medical Defense Associates*,
  856 S.W.2d 667 (Mo. 1993) .........................................................................................10

*Carlsen v. GameStop, Inc.*,
  833 F.3d 903 (8th Cir. 2016) ........................................................................................13

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
  580 F. Supp. 2d 273 (S.D.N.Y. 2008)...........................................................................13

*Coon v. Wood*,
  68 F. Supp. 3d 77 (D.D.C. 2014) ...................................................................................9

*DeCastro v. Hot Springs Neurology Clinic, P.A.*,
  107 F.4th 813 (8th Cir. 2024) ...................................................................................4, 12

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Doe 1 v. Chestnut Health Sys., Inc.*,
  2025 WL 1616635 (C.D. Ill. June 6, 2025) ........................................................5, 7

*Dyer v. Nw. Airlines Corps.*,
  334 F. Supp. 2d 1196 (D.N.D. 2004) ...................................................................6

*Est. of Petersen v. Bitters*,
  954 F.3d 1164 (8th Cir. 2020) ...........................................................................9

*Fierstein v. DePaul Health Ctr.*,
  949 S.W.2d 90 (Mo. Ct. App. 1997)...................................................................10

*Garrner v. Amazon.com, Inc.*,
  603 F. Supp. 3d 985 (W.D. Wash. 2022)..............................................................6

*Graham v. Universal Health Serv., Inc.*,
  539 F. Supp. 3d 481 (E.D. Pa. 2021) ...................................................................2

*Hale v. Emerson Elec. Co.*,
  942 F.3d 401 (8th Cir. 2019) ...........................................................................4

*Jarrett v. Upperline Health, Inc.*,
  2025 WL 3067545 (S.D. Ind. Aug. 8, 2025) ..........................................................5

*In re Jetblue Airways Corp. Priv. Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ...............................................................6, 7

*Juenger v. Deaconess Health Sys., Inc.*,
  2025 WL 2780221 (S.D. Ill. Sept. 30, 2025)........................................................5, 6

*Jungers v. Webster Elec. Coop., Inc.*,
  577 S.W.3d 498 (Mo. Ct. App. 2019)..................................................................15

*Kurowski v. Rush Sys. for Health*,
  659 F. Supp. 3d 931 (N.D. Ill. 2023) ...................................................................5

*Long v. Insight Commc'ns of Cent. Oh., LLC*,
  804 F.3d 791 (6th Cir. 2015) ...........................................................................8

*In re Michaels Stores Pin Pad Litig.*,
  830 F. Supp. 2d 518 (N.D. Ill. 2011) ...................................................................6

*Muskovich v. Crowell*,
  1996 WL 707008 (S.D. Iowa Aug. 30, 1996).........................................................8

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*N. Am. Cath. Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*,
887 F. Supp. 2d 78 (D.D.C. 2012) ............................................................9

*Negron v. Ascension Health*,
2025 WL 2710014 (E.D. Mo. Sept. 23, 2025)................................... *passim*

*Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*,
68 A.3d 697 (D.C. 2013) ............................................................12

*Randolph v. ING Life Ins. & Annuity Co.*,
973 A.2d 702 (D.C. 2009) ......................................................10, 13

*Retro Television Network, Inc. v. Luken Commc'ns, LLC*,
696 F.3d 766 (8th Cir. 2012) ........................................................3, 4

*Rodriguez v. Mena Hosp. Comm'n*,
2023 WL 7198441 (W.D. Ark. Nov. 1, 2023)...............................5, 7, 8

*Santos-Pagan v. Bayamon Med. Ctr.*,
2024 WL 4350990 (D.P.R. Sept. 30, 2024)........................................8

*Shafran v. Harley-Davidson, Inc.*,
2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) .....................................14

*Suesbury v. Caceres*,
840 A.2d 1285 (D.C. 2004) ...........................................................10

*T.R. v. Clay-Platte Fam. Med., P.C.*,
2025 WL 3143638 (W.D. Mo. Nov. 3, 2025).......................1, 9, 10, 11

*Vassiliades v. Garfinckel's, Brooks Bros.*,
492 A.2d 580 (D.C. 1985) ............................................................10

*Walker v. Coffey*,
956 F.3d 163 (3d Cir. 2020)............................................................7

*Willingham v. Glob. Payments, Inc.*,
2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ......................................7, 8

*Worix v. MedAssets, Inc.*,
857 F. Supp. 2d 699 (N.D. Ill. 2012) ..................................................8

*Worix v. MedAssets, Inc.*,
869 F. Supp. 2d 893 (N.D. Ill. 2012) ..................................................8

iv

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........................................................................8

*Yunker v. Pandora Media, Inc.*,
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)..........................................................................6

*Zafer Chiropractic & Sports Injs., P.A. v. Hermann*,
    501 S.W.3d 545 (Mo. Ct. App. 2016)........................................................................................4

**Statutes**

18 U.S.C. § 2510...........................................................................................................................6

18 U.S.C. § 2702.............................................................................................................1, 5, 6, 7

18 U.S.C. § 2711...........................................................................................................................6

**Rule**

Fed. R. Civ. P. 12........................................................................................................................4, 15

# INTRODUCTION

In *Negron v. Ascension Health*, 2025 WL 2710014, (E.D. Mo. Sept. 23, 2025), this Court dismissed several of plaintiffs' common law and statutory claims because plaintiffs' "legal theories don't fit the present facts." *Id.* at *13–14. Plaintiffs William Coton's, Jennifer Butler's, and Travis Butler's claim for violations of the Stored Communications Act ("SCA") and breach-of-fiduciary-duty claim against Ascension Health ("Ascension") suffer from the same deficiency.

Plaintiffs attempt to contort the SCA to claim that it creates liability for Ascension being victimized by a ransomware attack that resulted in the exfiltration of patient data. Compl. ¶¶ 69–81. But liability under the SCA demands that the defendant "knowingly divulge" "communication[s]" "to the public." 18 U.S.C. §§ 2702(a)(1), (a)(2). And as plaintiffs' allegations acknowledge, Ascension "didn't release or disclose Plaintiffs' information [to the public] at all; it was stolen by cybercriminals." *Negron*, 2025 WL 2710014, at *19. Liability under the SCA further requires that the defendant provide "electronic communication service[s]" or "remote computing service[s]." 18 U.S.C. §§ 2702(a)(1), (a)(2). Ascension did neither, and plaintiffs do not and cannot plead facts showing otherwise. Plaintiffs' SCA claim fails.

So too with plaintiffs' breach-of-fiduciary-duty claim. As a Missouri federal court concluded last month in a case with nearly identical facts, a health-care provider fails to breach any "fiduciary duty of confidentiality not to disclose any medical information" when it suffers a "data breach" and "an unauthorized third party . . . downloads Plaintiffs'" medical information. *T.R. v. Clay-Platte Fam. Med., P.C.*, 2025 WL 3143638, at *1, *7 (W.D. Mo. Nov. 3, 2025). For this reason alone, plaintiffs' breach-of-fiduciary-duty claim is barred. In addition, plaintiffs' claim fails because they do not plead proximate causation or damages and because plaintiffs' fiduciary duty claim is duplicative of their negligence claim. Plaintiffs' breach-of-fiduciary-duty claim should be dismissed.

1

Plaintiffs' other claims fail too, and plaintiffs lack standing to raise any of their claims. For the reasons stated in Ascension's motion-to-dismiss briefing in *Negron*, plaintiffs' breach of implied contract, unjust enrichment, and negligence claims should be dismissed, and plaintiffs have failed to plead that they experienced any actual injury resulting from the ransomware attack— arguments that Ascension raises for the purpose of preservation. Dkt. 59 at 2–5; Dkt. 60 at 5–23; Dkt. 65 at 1–11. Under the Court's ruling in *Negron*, plaintiffs' breach of implied contract and unjust enrichment claims should be dismissed, and plaintiffs' negligence claim should proceed to discovery, leaving plaintiffs' SCA and breach-of-fiduciary-duty claims for the Court to consider in the first instance. The Court should dismiss the complaint in its entirety.

## BACKGROUND

Ascension Health is "one of the nation's leading non-profit and Catholic health systems." Compl. ¶ 3. On or around May 8, 2024, Ascension learned that it had been the victim of a ransomware attack. *Id.* ¶ 20. In this type of attack, cyber criminals hold files hostage through encryption and demand payment from victims like Ascension in exchange for the decryption key. *See Ransomware*, https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/ransomware. Unlike other forms of cyberattacks, ransomware attacks generally do not involve the threat actor seeking to monetize stolen data by selling it to third parties. Rather, the target of the attack "is the holder of the confidential data; the misappropriation of the data" "is generally the means to an end: extorting payment." *Graham v. Universal Health Serv., Inc.*, 539 F. Supp. 3d 481, 487 (E.D. Pa. 2021).[1]

Upon detecting unusual activity on some of its network systems, Ascension immediately launched an investigation into the incident with the assistance of leading cybersecurity experts.

---

[1] All citations have been cleaned up, with quotation marks and citations omitted.

*See* Ex. A (Notice of Data Breach).[2] Ascension also notified law enforcement and government regulators. *Id.* During this time, Ascension continued to provide safe patient care and worked to restore its electronic systems as quickly and safely as possible. On December 19, 2024, after a comprehensive investigation, Ascension issued notices to certain of its patients and associates, informing them that their data had been impacted by the cybersecurity event. *See id.* Ascension offered 24 months of complimentary credit monitoring and identity theft protection services to those individuals. *Id.* Ascension also informed the notice recipients that it had "implemented enhanced security measures to prevent similar incidents from occurring in the future." *Id.*

The three named plaintiffs here allege that they are patients of Ascension providers who received such notices informing them that their information had been impacted in the May 2024 data breach. Compl. ¶¶ 9–11. Plaintiffs claim that they have incurred an increased risk of identity theft, spent "increased time and money monitoring [their] personal and financial accounts for fraud," and lost the benefit of their bargain for data security services. *Id.* ¶¶ 12, 53, 121. Plaintiffs seek to represent a putative national class of "[a]ll persons residing in the United States who received a data breach notice informing them that their PII/PHI had been breached by unauthorized third parties as a result of Ascension's data breach." *Id.* ¶ 60. Plaintiffs assert claims against Ascension for violation of the SCA, breach of fiduciary duty, negligence, breach of implied contract, and unjust enrichment. *Id.* ¶¶ 69–122.

In October 2025, after the Court decided Ascension's motion to dismiss in *Negron*, Dkt. 74, the parties submitted a joint proposed schedule for supplemental briefing, stipulating that "the Court's ruling on the breach of implied contract, negligence, and unjust enrichment claims in

---

[2] "[D]ocuments . . . incorporated within a complaint" are "part of the pleadings," *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 769 (8th Cir. 2012), and plaintiffs incorporated Ascension's "Notice of Data Breach." Compl. ¶¶ 9–11, 20 & n.3.

*Negron* would likely produce the same result for *Coton* Plaintiffs' claims." Dkt. 78 at 1. The parties agreed that "pursuant to the Court's ruling, the claim for negligence should proceed past the pleading stage while the claims for breach of implied contract and unjust enrichment should be dismissed." Dkt. 78 at 1. The parties also requested permission to submit additional briefing on only plaintiffs' SCA and breach-of-fiduciary-duty claims, which were not at issue in *Negron*. Dkt. 78 at 1. The Court granted that request. Dkt. 79 at 1. Ascension now briefs its motion to dismiss plaintiffs' SCA and breach-of-fiduciary-duty claims.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint is properly dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court must accept the factual allegations in the complaint as true, it "need not accept a plaintiff's legal conclusions," "[c]onclusory statements," or other "naked assertions devoid of further factual enhancement." *Retro Television Network, Inc.*, 696 F.3d at 768–69. Formulaic recitations of the elements of a cause of action do not suffice. *DeCastro v. Hot Springs Neurology Clinic, P.A.*, 107 F.4th 813, 816 (8th Cir. 2024).

## ARGUMENT

### I.    Choice Of Law

Plaintiffs' complaint is silent regarding which state's laws they are invoking for their common law claims. "Missouri applies the 'most significant relationship' test to all claims," *Hale v. Emerson Elec. Co.*, 942 F.3d 401, 404 (8th Cir. 2019), considering factors like the place of injury, the place of conduct causing the injury, and the residence or place of incorporation/business of the parties, *see Zafer Chiropractic & Sports Injs., P.A. v. Hermann*, 501 S.W.3d 545, 550 (Mo.

Ct. App. 2016). Some of these factors favor Missouri, where Ascension is incorporated, and some favor the District of Columbia, plaintiffs' place of residence and treatment. The Court need not make a definitive choice-of-law determination at this juncture, however, because plaintiffs' claims fail under either of the relevant jurisdictions' laws.

## II.    Plaintiffs' Stored Communications Act Claim Fails (Count One)

Plaintiffs claim that Ascension violated Sections 2702(a)(1) and 2702(a)(2)(A) of the SCA by "allowing its computer systems to be breached." Compl. ¶¶ 71, 75, 79 (citing 18 U.S.C. §§ 2702(a)(1), (a)(2)(A)). Section 2702(a)(1) of the SCA provides that "a person or entity providing an *electronic communication service* ['ECS'] *to the public shall not knowingly divulge . . .* the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1) (emphasis added). And Section 2702(a)(2)(A) of the SCA provides that "a person or entity providing a *remote computing service* ['RCS'] *to the public* shall not *knowingly divulge . . .* the contents of any communication which is carried or maintained on that service on behalf of . . . *a subscriber or customer of such service*." *Id.* § 2702(a)(2)(A) (emphasis added). Plaintiffs' SCA claim fails multiple times over.

***First***, Ascension is a health system operating hospitals—not an "ECS" provider. 18 U.S.C. § 2702(a)(1). Numerous courts have recognized that a "healthcare provider is not in the business of providing electronic communications services." *Juenger v. Deaconess Health Sys., Inc.*, 2025 WL 2780221, at *10 (S.D. Ill. Sept. 30, 2025); *Jarrett v. Upperline Health, Inc.*, 2025 WL 3067545, at *12 (S.D. Ind. Aug. 8, 2025) (same); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 939–40 (N.D. Ill. 2023) ("[H]ospital systems . . . are not in the electronic communications business."); *Doe 1 v. Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) (similar); *Rodriguez v. Mena Hosp. Comm'n*, 2023 WL 7198441, at *14 (W.D. Ark. Nov. 1, 2023)

5

(similar). Plaintiffs do not plausibly show that Ascension provides "to users . . . the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

The "fact that [Ascension], like most hospitals, operates a website, does not make it a provider of an 'electronic communications service' under . . . the SCA." *Juenger*, 2025 WL 2780221, at *10; Compl. ¶¶ 35, 119. That is because federal courts hold "[a]lmost without exception" that an ECS provider does not encompass an entity like Ascension that is "not in the business of selling Internet access itself." *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 307–08 (E.D.N.Y. 2005) (holding that "JetBlue is more appropriately characterized as a provider of air travel services and a consumer of electronic communication services"); *Garrner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1003–04 (W.D. Wash. 2022) ("A company that merely utilizes electronic communications in the conduct of its own business is generally considered a purchaser or user of the communications platform, not the provider of the service to the public."); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1199 (D.N.D. 2004) (similar).

**Second**, Ascension is not an RCS provider, either, nor are plaintiffs RCS "subscribers" or "customers." 18 U.S.C. § 2702(a)(2). Plaintiffs recite the statutory definition of an RCS, *see* 18 U.S.C. § 2711(2) ("[T]he term 'remote computing service' means the provision to the public of computer storage or processing services by means of an electronic communications system."), and assert that Ascension "stores its patients' PHI/PII and utilizes such information to provide services to its patients." Compl. ¶¶ 76, 78. But these allegations are too "conclusory" to plead that Ascension "provides a remote computing service" and further acknowledge that plaintiffs are Ascension's *patients*—not RCS customers or subscribers. *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *9 (N.D. Cal. Mar. 26, 2013); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 523–25 (N.D. Ill. 2011) (dismissing SCA claim because "Plaintiffs' allegations fail to

6

demonstrate that Michaels, a retailer of specialty arts and crafts, provides any off-site computer storage or computer processing services" to plaintiffs). Plaintiffs' pleading failure cannot be corrected. As a district court in the Eighth Circuit recently concluded, medical service providers are not RCS providers for their patients: they do not offer patients the services of an electronic communications system. *See Rodriguez*, 2023 WL 7198441, at *14. Plaintiffs thus cannot stretch the SCA to be the "sweeping catch-all" provision they desire. *Id.* at *15.

**Third**, even if Ascension were an ECS or RCS provider, "no facts alleged indicate that [Ascension] provides either computer processing services or computer storage *to the public*." *In re Jetblue*, 379 F. Supp. 2d at 310 (emphasis added); 18 U.S.C. §§ 2702(a)(1), (a)(2)(A). "Courts addressing the SCA requirement that the relevant service be offered 'to the public' have held that the unambiguous, plain meaning of the word public is 'the community at large.'" *Willingham v. Glob. Payments, Inc*., 2013 WL 440702, at *11 (N.D. Ga. Feb. 5, 2013) (collecting cases); *Walker v. Coffey*, 956 F.3d 163, 170 (3d Cir. 2020) (holding that "to the public" means "community at large"). To state an SCA claim, plaintiffs must show that Ascension's ECS or RCS were "available for public use." *Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041, 1043 (N.D. Ill. 1998). Plaintiffs do not and cannot make such a showing; indeed, they acknowledge that Ascension only "stores *its patients'* PHI/PII and utilizes such information to provide services to its patients." Compl. ¶ 78 (emphasis added). Thus, at most, Ascension provides services to its patients, "not to the 'community at large.'" *Willingham*, 2013 WL 440702, at *11; *Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (holding that a medical provider did not provide ECS services to the public).

**Fourth**, plaintiffs do not and cannot allege that Ascension "knowingly divulged" their personal information. 18 U.S.C. §§ 2702(a)(1), (a)(2)(A). To state an SCA claim, plaintiffs must plead that Ascension acted with a "knowing or intentional state of mind." *Rodriguez*, 2023 WL

7

7198441, at *13, *15 ("[A] plaintiff cannot state an SCA claim by alleging the defendant" acted "negligently or recklessly."); *Long v. Insight Commc'ns of Cent. Oh., LLC*, 804 F.3d 791, 797–98 (6th Cir. 2015) (same); *Muskovich v. Crowell*, 1996 WL 707008, at *4–5 (S.D. Iowa Aug. 30, 1996) (similar). But Ascension did not knowingly "release or disclose Plaintiffs' information at all; it was stolen by cybercriminals." *Negron*, 2025 WL 2710014, at *19; *see id.* at *13 (concluding that "appropriation of [plaintiffs'] private information . . . was perpetrated by a cybercriminal, not Ascension"). Plaintiffs merely allege that "[b]y failing to take reasonable steps to safeguard PHI/PII and allowing its computer systems to be breached, Ascension knowingly divulged Plaintiffs' and Class Members' PHI/PII." Compl. ¶ 79. Courts have repeatedly held that this type of conclusory allegation is insufficient to plead the knowing divulgence of a communication. *See Rodriguez*, 2023 WL 7198441, at *15 (holding in SCA case that allegation that defendant "fail[ed] to take reasonable steps to safeguard Plaintiffs' PII" was insufficient to plead that defendant "knowingly disclosed Plaintiffs' PII"); *Santos-Pagan v. Bayamon Med. Ctr.*, 2024 WL 4350990, at *2 (D.P.R. Sept. 30, 2024) (same in SCA case); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *42 (N.D. Cal. Aug. 30, 2017) (same in SCA case); *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 703 (N.D. Ill. 2012) (same in SCA case). Indeed, plaintiffs fail to allege "an actual *act* by [Ascension] that constituted knowing disclosure." *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 896 (N.D. Ill. 2012); *Willingham*, 2013 WL 440702, at *12 (same). Plaintiffs therefore "have not alleged that [Ascension] 'knowingly divulge[d]'" their PII or PHI. *Rodriguez*, 2023 WL 7198441, at *15.

## III.    Plaintiffs' Breach-Of-Fiduciary-Duty Claim Fails (Count Five)

Plaintiffs' breach-of-fiduciary-duty claim fails as a matter of law. It should be dismissed because it is redundant of plaintiffs' negligence claim, and plaintiffs fail to plausibly plead multiple elements of this claim. To state a claim for breach of fiduciary duty under Missouri law, a plaintiff

must allege "(1) a fiduciary relationship; (2) the breach of a fiduciary obligation; (3) proximate cause; (4) damages; and (5) no other recognized tort encompasses the facts alleged." *T.R.*, 2025 WL 3143638, at *7. And under District of Columbia law, a plaintiff must show that: "(1) defendant owed plaintiff a fiduciary duty; (2) defendant breached that duty; and (3) to the extent plaintiff seeks compensatory damages—the breach proximately caused an injury." *Coon v. Wood*, 68 F. Supp. 3d 77, 86 (D.D.C. 2014). Plaintiffs assert that "Ascension breached its fiduciary duties to Plaintiffs" by "failing to implement reasonable and adequate data security protections," causing plaintiffs to allegedly experience an increased risk of identity theft, to incur mitigation harms, and to lose the benefit of the bargain. Compl. ¶¶ 120–22. Under both Missouri and District of Columbia law, these allegations fail to plausibly assert any breach of a fiduciary duty by Ascension, proximate causation, or damages. This claim should be dismissed.

### A. The Breach-Of-Fiduciary-Duty Claim Is Subsumed Within The Negligence Claim

To start, plaintiffs' breach-of-fiduciary-duty claim should be dismissed because it is duplicative of their negligence claim. When plaintiffs "assert[] the same duty, breach, causation, and damages as to each claim," courts dismiss the redundant claim. *Est. of Petersen v. Bitters*, 954 F.3d 1164, 1171 (8th Cir. 2020); *see also T.R.*, 2025 WL 3143638, at *7 (to plead a breach-of-fiduciary-duty claim, plaintiffs must show that "no other recognized tort encompasses the facts alleged"); *N. Am. Cath. Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 85 (D.D.C. 2012) (dismissing duplicative breach-of-fiduciary-duty claim). Such a dismissal is warranted here because plaintiffs' negligence and breach-of-fiduciary duty causes of action are the same claim, and plaintiffs cannot meet their burden to show otherwise. *T.R.*, 2025 WL 3143638, at *7; *N. Am. Cath. Educ. Programming Found., Inc.*, 887 F. Supp. 2d at 84. Both counts rest on the allegation that Ascension owed a duty to exercise reasonable care in

protecting plaintiffs' personal information, Compl. ¶¶ 87, 117, and that it breached that duty by failing to implement reasonable and adequate data security protections, *id*. ¶¶ 96, 120. Likewise, plaintiffs recite nearly verbatim allegations to establish causation as to both claims—namely, that "as a direct and proximate result" of Ascension's failure to protect their data, "Plaintiffs and the Class Members were damaged because their PII/PHI was accessed by third parties." *Id*. ¶¶ 98, 121. Finally, plaintiffs assert the same speculative harms for both claims: the "increased risk of identity theft, property theft and extortion for which Plaintiff [] [was] forced to adopt preventative and remedial efforts" and spending "time combing through their records to ensure that they do not become the victims of fraud." *Id.* Because "Plaintiffs' claim is properly framed as negligence," their breach-of-fiduciary-duty claim should be dismissed. *Negron*, 2025 WL 2710014, at *13.

### B.    Plaintiffs Fail To Plead A Breach

Plaintiffs' breach-of-fiduciary-duty claim also fails because plaintiffs fail to plead a breach. Both Missouri and D.C. courts consistently hold that a medical provider breaches a fiduciary duty of confidentiality only by an actual "disclos[ure]" of medical information by the defendant to a third party. *Fierstein v. DePaul Health Ctr.*, 949 S.W.2d 90, 92 (Mo. Ct. App. 1997) (a healthcare provider has a fiduciary duty "*not to disclose* any medical information received in connection with the treatment of a patient" (emphasis added)); *T.R.*, 2025 WL 3143638, at *7 (same); *Brandt v. Medical Defense Associate*s, 856 S.W.2d 667, 674 (Mo. 1993) (same as to physicians); *Suesbury v. Caceres,* 840 A.2d 1285, 1287 (D.C. 2004) (plaintiffs must plead an "unconsented, unprivileged *disclosure* to a third party of [confidential] information" to state a claim for breach of the confidential physician-patient relationship (emphasis added)); *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 591–92 (D.C. 1985) (same); *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 709 n.11 (D.C. 2009) (same). Plaintiffs have not—and indeed cannot—allege any disclosure of plaintiffs' medical and personal information to a third party; rather, they repeatedly

10

plead that "unauthorized third-party hackers . . . stole the highly sensitive personal and medical information" of plaintiffs. Compl. ¶ 2; *see also id.* ¶¶ 20 ("[U]nauthorized third-party hackers . . . exfiltrated Plaintiffs' . . . sensitive PII and PHI."), 115, 121. As this Court has explained, plaintiffs cannot "convert omission into action" where the harmful act "was perpetrated by a cybercriminal, not Ascension." *Negron*, 2025 WL 2710014, at *13. Being a victim of a crime is not an act of disclosure.

Plaintiffs further cannot plead a breach by construing as a "disclosure" Ascension's alleged "fail[ure] to implement reasonable and adequate data security protections," "comply with data security guidelines," implement "data security training," and "adequately safeguard" plaintiffs' PHI and PII. Compl. ¶ 120 (asserting basis for Ascension's alleged breach). "Ascension didn't release or disclose Plaintiffs' information at all; it was stolen by cybercriminals." *Negron*, 2025 WL 2710014, at *19. Another Missouri federal court reached this conclusion last month when presented with nearly identical allegations. In *T.R. v. Clay-Platte Fam. Med., P.C.*, Missouri health-care providers and clinics suffered a "data breach" where "an unauthorized third party . . . accessed Defendants' network" and downloaded plaintiffs' PHI and PII. 2025 WL 3143638, at *1. Plaintiffs asserted that the healthcare providers and clinics breached their fiduciary duty "not to disclose any medical information in connection with [their] treatment." *Id.* at *7. The court dismissed plaintiffs' claim, explaining "[a]lthough Plaintiffs plausibly allege that unauthorized third parties accessed their Private Information because Defendants failed to protect their Private Information, Plaintiffs fail to allege facts that Defendants disclosed their Private Information to unauthorized third parties." *Id.* So too here. Plaintiffs allege only that cybercriminals stole their information—not that Ascension disclosed it. Compl. ¶¶ 2, 20, 115, 121. Plaintiffs' failure to plead a breach of any fiduciary duty warrants dismissal of their breach-of-fiduciary-duty claim.

11

### C.    Plaintiffs Fail To Plead Proximate Causation

Plaintiffs' breach-of-fiduciary-duty claim should also be dismissed because plaintiffs' proximate-cause allegations are conclusory. *See Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 709–10 (D.C. 2013) (dismissing breach-of-fiduciary-duty claim for failure to plead proximate causation); *Beasley Ins. Co., Inc. v. Brown & James, P.C.*, 2019 WL 2285916, at *9 (E.D. Mo. May 29, 2019) (same). In pleading their breach-of-fiduciary-duty claim, plaintiffs merely assert the legal conclusion that "[a]s a direct and proximate result of Ascension's breaches of its fiduciary duties," they experienced "damages" and "injury." Compl. ¶¶ 121–22. But as this Court has held, "(l)egal conclusions or formulaic recitations of the elements of a cause of action do not suffice." *Negron*, 2025 WL 2710014, at *8; *DeCastro*, 107 F.4th at 816–17 (affirming dismissal of complaint "flush with legal conclusions but short on facts"). And the link between plaintiffs' alleged harms and the ransomware attack cannot be assumed, as this harm may have (or may yet) result from independent action of a third party. *Negron*, 2025 WL 2710014, at *6 (concluding that an increase in spam could have arisen "from any number of sources" other than Ascension); *Aspen Am. Ins. Co. v. Blackbaud, Inc*., 624 F. Supp. 3d 982, 996, 1001 (N.D. Ind. 2022) (dismissing breach-of-fiduciary-duty claim for lack of proximate causation where plaintiffs merely alleged that they spent money on mitigation efforts after a data breach). For this reason, plaintiffs' breach-of-fiduciary-duty claim should be dismissed.

### D.    Plaintiffs Fail To Plead Cognizable Damages

Plaintiffs' breach-of-fiduciary-duty claim also fails because they do not plausibly plead that any alleged breach by Ascension proximately caused them cognizable damages. Plaintiffs contend that they alleged damages in the form of increased risk of identity theft, the cost of mitigation measures, and the loss of the benefit of their bargain. Compl. ¶ 121. But none of these alleged injuries satisfies the damages element of a breach-of-fiduciary-duty claim, and plaintiffs

cannot rely on the Court's standing analysis in *Negron* to save their claim. As the Eighth Circuit has held, "[i]t is crucial . . . not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016) (dismissing claims despite finding standing); *see also Negron*, 2025 WL 2710014, at *6 (noting more demanding pleading standard for pleading an injury on the merits rather than as a matter of standing).

   ***Increased risk of identity theft.*** Plaintiffs' alleged "increased risk of identity theft, property theft, and extortion," Compl. ¶ 121, is "not a harm that the law is prepared to remedy." *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 283 (S.D.N.Y. 2008). As Judge Frederick Buckles explained in a data-breach case, an alleged "increased risk of identity theft" is "speculative," and "[d]amages cannot reasonably be assessed for a hypothetical harm which may (or may not) come to plaintiff in the future." *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1054–55 (E.D. Mo. 2009) (dismissing claim for "fail[ing] to plead harm resulting in compensable damage"). The District of Columbia Court of Appeals has reached the same conclusion, holding that "allegations about the risk of identity theft" and associated "danger" of "disclosure" of personal information to third parties "do not state the type of injury required to maintain a suit for common-law breach of fiduciary duty." *Randolph*, 973 A.2d at 709. There, plaintiffs' personal information, including their unencrypted and unprotected Social Security numbers, was stolen by a computer thief, and plaintiffs asserted that their personal information "may" be misused; the Court of Appeals rejected plaintiffs' assertion of injury as "fail[ing] to state a claim." *Id.* at 704, 708–09. The Court should reach the same conclusion here and dismiss plaintiffs' claim.

   ***Mitigation Costs.*** Plaintiffs' alleged mitigation harms—the time associated with

13

monitoring their financial and healthcare accounts and paying for identity and credit monitoring, Compl. ¶¶ 53, 121—also fail to satisfy the damages requirement for their breach-of-fiduciary-duty claim. Given that plaintiffs have not asserted that they experienced any identity theft or misuse, their "prophylactic mitigation measures" do not "constitute actual damages in their own right." *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 14 (D.D.C. 2019) (collecting cases); *Baugher v. Gates Rubber Co.*, 863 S.W.2d 905, 914 (Mo. Ct. App. 1993) (speculative injuries are insufficient as a matter of Missouri tort law); *Abdelhady v. George Washington Univ.*, 2022 WL 17364618, at *7 (D.D.C. Dec. 1, 2022) (similar); *see also Rakyta v. Munson Healthcare*, 2021 WL 4808339, at *7 (Mich. Ct. App. Oct. 14, 2021) (holding that "prophylactic measures to mitigate the losses" in response to a data breach do not create "cognizable damages" and dismissing breach-of-fiduciary-duty claim). Indeed, "[c]ourts have uniformly ruled that the time and expense of credit monitoring to combat an increased risk of future identity theft [are] not, in itself, an injury that the law is prepared to remedy." *Shafran v. Harley-Davidson, Inc.*, 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008) (collecting cases). In sum, because "Plaintiff[s'] alleged injuries are solely the result of a perceived and speculative risk of future injury that may never occur," *id.*, plaintiffs' alleged mitigation harms do not establish damages for their breach-of-fiduciary-duty claim.

***Lost Benefit of Bargain.*** Plaintiffs' alleged loss of the benefit of the bargain also falls short of establishing damages because "the complaint cannot be understood to demonstrate Ascension's . . . assent" to any contract "for data security." *Negron*, 2025 WL 2710014, at *12. Plaintiffs plead that they have "suffered actual damages in an amount at least equal to the difference in value between the medical services that include reasonable and adequate data security that they bargained for, and the medical services that do not that they actually received." Compl. ¶ 121. But as this Court explained in *Negron* and as plaintiffs' allegations make clear, "Ascension's obligation

to protect Plaintiffs' information is entirely statutory, not transactional." *Negron*, 2025 WL 2710014, at *12; Compl. ¶ 4 (identifying Ascension's "HIPAA Notice of Privacy Practices" as the source of the "duty to implement reasonable, adequate industry-standard data security policies . . . to protect patient PII and PHI" and noting that Ascension states "[w]e are required by law to maintain the privacy and security of your health information"). Because plaintiffs have not and cannot plead any contract for data security, they cannot as a matter of law have incurred damages from an alleged loss of the benefit of any data security bargain. *See Jungers v. Webster Elec. Coop., Inc.*, 577 S.W.3d 498, 506–07 (Mo. Ct. App. 2019) (concluding that absence of a contract precluded damages theory of lost benefit of the bargain). Courts in the District of Columbia agree. *See, e.g.*, *Attias*, 365 F. Supp. 3d at 12–13 (concluding that under District of Columbia law, benefit-of-the-bargain damages do not qualify as "actual damages in the data-breach context"). Plaintiffs' alleged benefit-of-the-bargain losses thus also fail to qualify as damages.

## IV.    Plaintiffs Lack Standing, And Their Negligence, Breach Of Implied Contract, And Unjust Enrichment Claims Fail (Counts Two, Three, And Four)

For the reasons stated in Ascension's motion to dismiss in *Negron*, plaintiffs' case should be dismissed for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and plaintiffs' breach of implied contract, negligence, and unjust enrichment claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief. Dkt. 78 at 1–2 (requesting permission to incorporate by reference arguments from the *Negron* motion to dismiss briefing); Dkt. 79 at 1 (granting that request); Dkt. 59 at 2–5; Dkt. 60 at 5–23; Dkt. 65 at 1–11.

## CONCLUSION

Because plaintiffs lack standing and fail to plead any viable claim, Ascension respectfully requests that this Court dismiss the complaint in its entirety.

Dated: December 23, 2025                    Respectfully submitted,

By:    <u>*/s/ Colleen A. Kinsey*</u>
                    Timothy J. Gearin        #39133MO
                    Maureen Bryan            #49454MO
                    Colleen A. Kinsey        #71972MO
                    ARMSTRONG TEASDALE LLP
                    7700 Forsyth Blvd., Suite 1800
                    St. Louis, Missouri 63105
                    Tel: (314) 621-5070
                    tgearin@atllp.com
                    mbryan@atllp.com
                    ckinsey@atllp.com
                    E-serveBTC@atllp.com

                    Martin L. Roth (admitted *pro hac vice*)
                    KIRKLAND & ELLIS LLP
                    333 West Wolf Point Plaza
                    Chicago, IL 60654
                    Tel: (312) 862-7170
                    rothm@kirkland.com

                    Devin S. Anderson (admitted p*ro hac
                    vice*)
                    KIRKLAND & ELLIS LLP
                    95 South State Street
                    Salt Lake City, UT 84111
                    Tel: (801) 877-8115
                    devin.anderson@kirkland.com

                    *Counsel for Defendant Ascension Health*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 23rd day of December 2025, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Matthew J. Devoti
Matthew C. Casey
CASEY DEVOTI & BROCKLAND
5100 Dagget Avenue
St. Louis, Missouri 63110
mdevoti@caseydevoti.com
mcasey@caseydevoti.com

Jesenia A. Martinez
WILSHIRE LAW FIRM, PLC
3055 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90010
T: (213) 381-9988
F: (213) 381-9989
thiago@wilshirelawfirm.com

*Counsel for Plaintiffs*

                                                    */s/ Colleen A. Kinsey*

2