**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM COTON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Lead Case No. 4:24-CV-00669-JAR |
| | ) | Consolidated Case No. 4:25-CV-72-JAR |
| vs. | ) | |
| | ) | |
| ASCENSION HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's motion to dismiss two claims brought by District of Columbia citizens in a consolidated case within this larger putative class action arising from a healthcare system data breach. For the reasons set forth below, the motion will be granted in part and denied in part.

## BACKGROUND

Factual Pleadings

For purposes of the instant motion, the facts alleged in the complaint can be summarized as follows. Defendant Ascension Health is a Missouri-based non-profit healthcare system operating over 140 facilities serving 17 states and the District of Columbia. In connection with the provision of medical services, Ascension stores patient records containing protected health information (PHI) and personal identifying information (PII).

1

The Health Insurance Portability and Accountability Act (HIPAA) requires regulated entities like Ascension to maintain appropriate safeguards to protect the privacy of PHI and safeguard it from improper disclosure. Among its specifications, HIPAA requires providers to:

- Ensure the confidentiality, integrity, and availability of electronic PHI; protect against any reasonably anticipated threats or hazards to the security or integrity of such information or impermissible use thereof; and ensure compliance by its workforce. 45 C.F.R. § 164.306(a).

- Review and modify security measures as needed to continue the reasonable and appropriate protection of PHI. 45 C.F.R. § 164.308(a)(1).

- Implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights. 45 C.F.R. § 164.312(a)(1).

Ascension's HIPAA Notice of Privacy Practices states in pertinent part:

- We are committed to maintaining the privacy and confidentiality of your health information.

- We are required by law to maintain the privacy and security of your health information.

- We will not use or share your information … unless you tell us we can in writing.

Plaintiffs William Coton and Jennifer and Travis Butler were Ascension patients on May 8, 2024, when its technology network suffered a ransomware attack wherein hackers exfiltrated electronic files containing patients' PHI and PII. This included medical records, insurance and payment information, social security numbers, driver's licenses, birth dates, and addresses. Both HIPAA and Missouri state law require companies to provide timely notice following a data breach. 45 C.F.R. § 164.404; Mo. Rev. Stat. § 407.1500. Plaintiffs received notice of the breach around December 19, 2024, and filed the instant complaint on January 17, 2025. Plaintiffs plead that Ascension had a duty to protect their data through adequate security measures, and Plaintiffs relied on Ascension to do so. They plead that the breach was foreseeable, and they suffered

2

damages in the form of lost privacy, increased spam, a heightened risk of identity theft, and lost time and money spent mitigating that risk.

Procedural History

This case is one of fourteen consolidated cases involving the same data breach. The plaintiffs in the lead case filed a putative class action within days after the event in May 2024 asserting claims of negligence, negligence per se, breach of implied covenant of good faith and fair dealing, and unjust enrichment. *Negron v. Ascension*, No. 4:24-cv-669. In July 2024, the Court consolidated twelve other cases into *Negron*. In October 2024, the *Negron* plaintiffs filed an amended complaint asserting seven claims on behalf of a nationwide class and eleven state law claims specific to seven state subclasses. Ascension filed a motion to dismiss that amended complaint in November 2024, and briefing was complete by February 5, 2025.

In the interim, Plaintiffs Coton and Butler filed the instant complaint in January 2025 asserting (1) a violation of the Stored Communications Act (SCA), 18 U.S.C. § 2702, (2) negligence, (3) breach of implied contract, (4) unjust enrichment, and (5) breach of fiduciary duty. *Coton v. Ascension*, 4:25-CV-00072-JAR. *Coton* was consolidated into *Negron* on February 19, 2025.

Given the foregoing chronology and partial overlap in claims, the parties agreed to stay responsive briefing in *Coton* pending the Court's ruling on the 18-count motion to dismiss in *Negron*. As relevant here, the Court dismissed the *Negron* plaintiffs' claims for breach of implied contract and unjust enrichment but allowed the negligence claim to proceed. (Doc. 74); *Negron v. Ascension Health*, No. 4:24-CV-00669-JAR, 2025 WL 2710014 (E.D. Mo. Sept. 23, 2025).

3

Following this resolution of three out of the *Coton* Plaintiffs' five claims, Ascension then filed

the present motion to dismiss their two remaining claims pursuant to Rule 12(b)(6).[1]

### **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570

(2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. When considering a Rule 12(b)(6) motion to dismiss, the court must

accept the allegations contained in the complaint as true, and all reasonable inferences from the

complaint must be drawn in favor of the nonmoving party. *Ringhofer v. Mayo Clinic,*

*Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024). Courts are not bound to accept as true a legal

conclusion couched as a factual allegation, and factual allegations must be enough to raise a right

to relief above the speculative level. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). Legal

conclusions or formulaic recitations of the elements of a cause of action do not suffice.

*DeCastro v. Hot Springs Neurology Clinic, P.A.*, 107 F.4th 813, 816 (8th Cir. 2024).

Review of the complaint on a motion to dismiss is a context-specific task that requires the

court to draw on its judicial experience and common sense. *Norfolk & Dedham Mut. Fire Ins.*

---

[1]     For purposes of preservation for appeal, Ascension also contends that Plaintiffs lack standing to raise any of their claims. (Doc. 83 at 8). The Court considered Ascension's arguments on this issue in *Negron* and found that the plaintiffs had established standing. (Doc. 74 at 7-14); *Negron*, 2025 WL 2710014, at *5-8. The Court need not revisit the inquiry here and finds that Plaintiffs have standing based on the same type of injury found cognizable in *Negron. Id*.

For their part, Plaintiffs assert for purposes of preservation that their claims for breach of implied contract and unjust enrichment are viable and should proceed. (Doc. 88 at 20). The Court addressed those claims in *Negron* and will dismiss them here for the same reasons without further discussion. (Doc. 74 at 22-24); *Negron*, 2025 WL 2710014, at *11-13.

*Co. v. Rogers Mfg. Corp.*, 122 F.4th 312, 315 (8th Cir. 2024) (citing *Iqbal*, 556 U.S. at 679). A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*.

## DISCUSSION

Stored Communications Act (Count I)

The SCA states that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). An "electronic communication service" (ECS) is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). The SCA also prohibits providers of "remote computing services" from knowingly divulging communications maintained for subscribers or customers. 18 U.S.C. § 2702(a)(2). A remote computing service (RCS) is "the provision to the public of computer storage or processing services by means of an electronic communications system." 18 U.S.C. § 2711(2). An electronic communications system refers to the technology and equipment used for electronic communications and storage. 18 U.S.C. §2510(14).

In Count I, Plaintiffs plead that Ascension provides ECS to the public and violated the SCA by failing to protect and thus knowingly divulging their PHI/PII. Plaintiffs further submit that Ascension provides RCS by storing PHI/PII. In its motion to dismiss this count, Ascension argues that Plaintiffs fail to state a viable SCA claim because Ascension doesn't provide ECS or RCS at all, much less to the public, and Ascension didn't "knowingly divulge" patient PHI/PII when it fell victim to a cyberattack.

Ascension cites several cases where district courts have determined that health systems

5

are not ECS providers. *Juenger v. Deaconess Health Sys., Inc.*, 2025 WL 2780221, at \*10 (S.D. Ill. Sept. 30, 2025); *Jarrett v. Upperline Health, Inc.*, 2025 WL 3067545, at \*12 (S.D. Ind. Aug. 8, 2025); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 939–40 (N.D. Ill. 2023); *Doe 1 v. Chestnut Health Sys., Inc.*, 2025 WL 1616635, at \*12 (C.D. Ill. June 6, 2025); *Rodriguez v. Mena Hosp. Comm'n*, 2023 WL 7198441, at \*14 (W.D. Ark. Nov. 1, 2023).  More broadly, a "company that merely utilizes electronic communications in the conduct of its own business is generally considered a purchaser or user of the communications platform, not the provider of the service to the public." *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1003–04 (W.D. Wash. 2022). The Court agrees with the rationale of the foregoing cases. Ascension is not an ECS provider.

In response to the motion, Plaintiffs appear to abandon their theory that Ascension provides ECS and instead argue that Ascension provides RCS by maintaining PHI/PII on an electronic communications system. This is equally unpersuasive. The Eighth Circuit has cautioned that the SCA is not a catch-all for the protection of internet communications; rather, it is narrowly tailored to provide Fourth Amendment-like protections for computer networks. *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 839 (8th Cir. 2015) (citing Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1214 (2004)). In lay terms, ECS generally refers to cellphone carriers, email providers, and social media platforms while RCS refers to cloud computing or similar off-site storage providers. *Burrows v. Purchasing Power, LLC*, 2012 WL 9391827, at \*4-5 (S.D. Fla. Oct. 18, 2012); Balser, J (2022, August 3) *Overview of Governmental Action Under*

6

*the Stored Communications Act (SCA)*. (CRS Report No. LSB10801).[2] To receive SCA

protection as a customer of an RCS, the provider must receive the data electronically,[3] must

maintain it solely for the purpose of providing storage or processing, and cannot be authorized to

access the content for any other purpose. 18 U.S.C. § 2702(a)(2). William Jeremy Robison, *Free

at What Cost?: Cloud Computing Privacy Under the Stored Communications Act*, 98 Geo. L.J.

1195, 1207 (2010). A company is not an RCS when it merely stores customer information

incidental to its core business. *See Burrows*, 2012 WL 9391827, at *5 (citing *In re Jetblue

Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 310 (E.D.N.Y. 2005)). Clearly then, Ascension

is not an RCS provider either.

Moreover, even if Ascension could be characterized as an ECS or RCS rather than a

customer of those services, the SCA only prohibits a provider from *knowingly divulging*

communications to a third party. The present facts don't fit that description. As the Court

explained in *Negron*, Ascension didn't knowingly divulge Plaintiffs' PHI/PII to anyone;

cybercriminals hacked into Ascension's servers and stole it. (Doc. 74 at 25); *Negron*, 2025 WL

2710014, at *13. Plaintiffs improperly equate Ascension's alleged omissions with third-party

criminal actions. But "knowingly" doesn't include negligent or even reckless conduct.

*Rodriguez*, 2023 WL 7198441, at *15 (citing *Long v. Insight Communications of Central Ohio,

LLC*, 804 F.3d 791, 797-98 (6th Cir. 2015), discussing legislative history).[4] Plaintiffs' claim is

---

[2]    https://www.congress.gov/crs_external_products/LSB/PDF/LSB10801/LSB10801.1.pdf. The Court may take judicial notice of government websites. *Twin Cities Safety, LLC v. Moe*, 139 F.4th 1015, 1019 n.6 (8th Cir. 2025).

[3]    Given that PHI/PII is often provided or generated in person at the time of treatment, the Court questions whether such data even qualifies as "electronic communications" as contemplated in the SCA.

[4]    The cases cited by Plaintiffs are inapposite or simply unpersuasive. In *United States v. King*, 898 F.3d 797, 807 (8th Cir. 2018), a jury instruction on willful blindness was proper in the context of a criminal drug conspiracy. But the SCA requires a knowing act. In *Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 354 (N.D.N.Y. 2023), the court likened a willful misrepresentation of data security to willful

properly framed as negligence, not a knowing divulgence.

Plaintiffs fail to state a claim under the SCA. Ascension's motion to dismiss will be granted as to Count I.

Breach of Fiduciary Duty (Count V)

In Count V, Plaintiffs plead that Ascension had a fiduciary duty to safeguard their PHI/PII and breached that duty by failing to implement adequate security protections, resulting in injury. In *Negron*, this Court accepted that the patient-provider fiduciary relationship and corresponding duty of confidentiality necessarily extend to the institution that maintains the treatment records. (Doc. 74 at 17); *Negron*, 2025 WL 2710014, at *9. Ascension contends, however, that this claim is subsumed into Plaintiffs' negligence claim and can't stand alone as a separate theory. Ascension further disputes the existence of an active breach, causation, and damages.

As a preliminary matter, Plaintiffs' complaint doesn't specify whether the substantive law of Missouri or the District of Columbia applies. In its motion to dismiss, Ascension submits that the Court need not undertake a choice-of-law analysis because the claim fails either way. The parties primarily cite Missouri and Eighth Circuit caselaw, with some accord from the District of Columbia. The Court will do the same. In both jurisdictions, the basic elements of the claim are: (1) a fiduciary relationship, (2) breach of the fiduciary duty, (3) causation, and (4) injury. *Int'l Env't Mgmt., Inc. v. United Corp. Servs., Inc.*, 858 F.3d 1121, 1125 (8th Cir. 2017) (applying

---

disclosure as a privacy tort. This Court rejected that approach in *Negron*. (Doc. 74 at 25). In *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 819 (E.D. Ky. 2019), a defendant employee released PII by responding to a phishing email. There is no such affirmative act here. In *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 62 (D.C. Cir. 2019), the OPM willfully violated specific provisions of the Privacy Act by failing to secure PII under 5 U.S.C. § 552a(e), not by actively disclosing it. The Court remains convinced that "knowingly divulging" under the SCA imposes a higher standard.

Missouri law in registered agent context); *Lafarge N. Am., Inc. v. Discovery Grp. L.L.C.*, 574 F.3d 973, 983 (8th Cir. 2009) (applying Missouri law in real estate broker context); *Coon v. Wood*, 68 F. Supp. 3d 77, 86 (D.D.C. 2014) (D.C. real estate broker).

However, Ascension asserts that there is a fifth requirement that "no other recognized tort encompasses the facts alleged." *T.R. v. Clay-Platte Fam. Med., P.C.*, 2025 WL 3143638, at *7 (W.D. Mo. Nov. 3, 2025) (citing *Costa v. Allen*, 274 S.W.3d 461, 462 (Mo. 2008)). Applying this rule, Ascension argues that Plaintiffs' breach of fiduciary duty claim merely duplicates their negligence claim. Plaintiffs counter that the doctor-patient fiduciary duty is distinct from the regulatory duty of care arising from HIPAA, and Plaintiffs should be permitted to plead in the alternative at this stage. The Court agrees.

Cases discussing the fifth element generally arise in the context of professional malpractice.  In *Henreid v. Kodner Watkins LC*, No. 4:23CV249 HEA, 2024 WL 5200857, at *3 (E.D. Mo. Dec. 23, 2024), the court explained that the fifth element flows from *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624 (Mo. 1995), holding that the plaintiff's breach of fiduciary duty claim was "no more than an action for attorney malpractice" because the alleged breach was "dependent on the existence of attorney negligence, not on the breach of a trust."  "[T]he standard of care concerns negligence and the standard of conduct concerns a breach of loyalty or confidentiality." *Henreid*, 2024 WL 5200857, at *3 (citing 2 Legal Malpractice, § 15:3 at 660-61 (2024 ed.)). *Accord, Hiscox Ins. Co. Inc. v. Warden Grier, LLP*, 2021 WL 5828042, at *4 (W.D. Mo. Dec. 8, 2021) (denying dismissal of both claims but later reasoning on summary judgment that the violation of the duty of loyalty was really a violation of the duty of care and not an independent breach of fiduciary duty); *N. Am. Cath. Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 84

9

(D.D.C. 2012) ("[C]ourts applying District of Columbia law should dismiss claims for breach of fiduciary duty that merely restate malpractice claims."). But *Donahue* doesn't preclude a claim for breach of fiduciary duty where the alleged breach is independent of any malpractice. *Klemme v. Best*, 941 S.W.2d 493, 496 (Mo. 1997).

The foregoing cases make sense in a legal malpractice context, but the Court is not persuaded that they should bar Plaintiffs' fiduciary claim here without discovery. Although the regulatory and fiduciary duties owed to Plaintiffs may ultimately prove to overlap, ample Missouri precedent supports the notion that Plaintiffs may proceed on both theories at this stage. *See e.g., Howland v. Truman Med. Ctr., Inc.*, 719 S.W.3d 98 (Mo. App. W.D. 2025) (involving disclosure of medical information); *J.J. by & through C.W. v. Poplar Bluff Reg'l Med. Ctr., L.L.C.*, 675 S.W.3d 259 (Mo. App. E.D. 2023) (reversing dismissal of both claims because a medical affidavit was not required); *Knockerball MidMo, LLC v. McGowan & Co., Inc.*, 667 S.W.3d 640 (Mo. App. W.D. 2023) (upholding summary judgment on both theories due to lack of damages); *Lafarge*, 574 F.3d at 983-84 (applying Missouri law and reversing summary judgment on both theories).[5] Likewise, D.C. law allows Plaintiffs' claims to proceed in tandem at this stage. *See Guo Wengui v. Clark Hill, PLC*, 440 F. Supp. 3d 30, 39-40 (D.D.C. 2020) (declining to dismiss alternative claims of legal malpractice and breach of fiduciary as duplicative after a cyberattack).[6]

---

[5]    In the Court's view, *Lafarge* is more instructive than *Estate of Petersen v. Bitters*, 954 F.3d 1164 (8th Cir. 2020), where the Eighth Circuit affirmed a Nebraska district court's dismissal of a negligence claim pursuant to Rule 50 after a hearing. The court acknowledged that negligence and breach of fiduciary duty claims are not always redundant. *Id*. at 1171. In *Lafarge*, both claims arose out of the same omission and, according to the Eighth Circuit, should have survived summary judgment. Out of caution, and at this early stage, this Court will allow them both to proceed here as well.

[6]    *Presidential Bank, FSB v. 1733 27th St. SE LLC*, 271 F. Supp. 3d 163, 174 (D.D.C. 2017), doesn't support Ascension's position because that case is substantively inapposite. The redundant tort claims there were more properly framed as breaches of the contract at issue. Moreover, even in that

10

Next, Ascension asserts that the element of breach is absent here because, again, Ascension didn't actively disclose or release PHI/PII; rather, it was stolen. Ascension cites *T.R. v. Clay-Platte Family Medicine*, where a court in the Western District of Missouri dismissed this claim on that basis. 2025 WL 3143638, at *7.[7] *Accord, Hulse v. Acadian Ambulance Serv. Inc.*, 2025 WL 1453847, at *15 (W.D. La. May 19, 2025) (reasoning that breach of fiduciary duty requires subjective intent or at least gross negligence). However, other courts have allowed this claim to stand after a cyberattack without analysis as to whether a breach requires action or merely omission. *See e.g., In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 165 (D. Mass. 2024) (allowing both negligence and breach of fiduciary duty claims to proceed); *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1383 (N.D. Ga. 2021) (same); *Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1318 (N.D. Ga. 2024); *Tucker v. Marietta Area Health Care, Inc.*, 2023 WL 423504, at *6 (S.D. Ohio Jan. 26, 2023).

Longstanding Missouri Supreme Court precedent instructs that proof of intent is not required to establish a breach of fiduciary duty in the attorney-client context. *Klemme*, 941 S.W.2d at 496.  And D.C. law explicitly recognizes a breach of fiduciary claim after a law firm cyberattack. *Guo Wengui*, 440 F. Supp. 3d at 40. The Court sees no reason why a healthcare provider's duty should differ such that a breach of patient confidentiality could occur only

---

context, a breach of fiduciary duty claim can sometimes stand separately. *See e.g., Friends Christian High Sch. v. Geneva Fin. Consultants*, 39 F. Supp. 3d 58, 63 (D.D.C. 2014) (allowing a fiduciary duty claim to proceed even where a negligence claim duplicated the breach of contract claim).

[7]      The other cases cited in Ascension's briefs don't address the distinction between active disclosure and passive exposure. See *Brandt v. Med. Def. Assocs.*, 856 S.W.2d 667 (Mo. 1993) (generally discussing doctor-patient confidentiality and deeming it waived when patient sues for malpractice); *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 591 (D.C. 1985) (finding duty breached where doctor disclosed a patient's photos); *Suesbury v. Caceres*, 840 A.2d 1285 (D.C. 2004) (no breach as between two doctors in the same practice); *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 709 (D.C. 2009) (dismissing a data breach claim for lack of injury).

through action. While the SCA and privacy torts require intentional acts, in the Court's view, a fiduciary relationship invites a level of trust that could conceivably be breached by a decision not to act, or a passive failure of caution. Leaving for another day the arguable overlap of ordinary and fiduciary standards of care in the HIPAA context, at this stage the Court is unwilling to conclude, as a matter of law, that a breach of fiduciary duty necessarily involves an action as opposed to inaction. The Court declines to dismiss Count V on this basis.

Finally, Ascension contends that Plaintiffs haven't sufficiently pleaded any cognizable damages resulting from the breach. Though Plaintiffs' complaint lacks the level of detail set forth in the *Negron* complaint, Plaintiffs nonetheless adequately plead damages at this stage. As stated in *Negron*, courts in the Eighth Circuit recognize a substantial risk of future injury when a data breach involves social security numbers and birth dates. *Negron*, 2025 WL 2710014, at *5-6 (citing *In re SuperValu, Inc.*, 870 F.3d 763, 770-71 (8th Cir. 2017)).  Given this real risk, Plaintiffs plead that, since the data breach and as a result of it, they have spent time and money monitoring their personal and financial accounts for fraud. (Compl.  ¶¶ 12, 53). Though unclearly worded, the complaint suggests that Plaintiff Coton purchased credit monitoring services in response to an uptick in spam and reports of fraudulent financial activity after the data breach. (Compl. ¶ 12). Time and money spent on mitigation measures are cognizable present injuries caused by a data breach. *Id*. at *6; *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 65 (D.C. Cir. 2019).[8] Plaintiffs also plead that they have lost the value of their PII for purposes of consumer transactions. (Compl. ¶ 54). This, too, is a cognizable injury. *Negron*,

---

[8]     Ascension relies on *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 710 (D.C. 2013), for the proposition that Plaintiffs' breach of fiduciary claim should be dismissed for failure to plead proximate causation. This case is inapposite on its facts insofar as it involves a frivolous pro se lawsuit speculating that the U.S. Supreme Court would have granted certiorari in the former client's case but for the firm's abstention. Plaintiffs' causation pleadings here are sufficient at this stage.

2025 WL 2710014, at *7-8.

Accepting the pleadings as true and drawing all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have adequately pleaded facts stating a claim for breach of fiduciary duty. Ascension's motion to dismiss Count V will be denied.

Other Counts

Consistent with this Court's order dismissing the *Negron* plaintiffs' claims for breach of implied contract and unjust enrichment (Doc. 74 at 22-24), Plaintiffs' claims on those theories (Counts III and IV) will be dismissed here as well. Plaintiffs' negligence claim (Count II) will proceed.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss the Coton complaint (No. 4:25-cv-00072-JAR) is **GRANTED** with respect to Counts I, III, and IV. (Doc. 59). The motion is **DENIED** with respect to Counts II and V, which will proceed with the lead case (No. 4:24-cv-00669-JAR).

Dated this 9th day of April 2025.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE